CHARLES JOHNSON

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. CRIMINAL LAW—*indictment—perjury.* An indictment for perjury in making an affidavit of the qualification of a person to vote at an election held in pursuance of law, the vote of such person having been challenged, which charges that the defendant feloniously, wilfully, corruptly and falsely

in and by the said affidavit did depose, etc., omitting the word "knowingly," used in the Election law, is not bad on account of the omission of such word, the word "wilfully" implying intention as well as deliberation and purpose.

2. An indictment for perjury in making an affidavit of the qualification of a voter, which avers that there was an election for trustees and a clerk for a certain village named, called and held in pursuance of law therein, is a sufficient averment that the election board was legally organized according to law, and an averment that the judge of election who administered the oath had full power and authority to administer the same, is a sufficient allegation of the legal organization of the board of election.

3. In such a case there need be no averment as to the manner in which the election board was organized, nor is it required to be averred who the officer was who administered the oath, and to set it out, or to aver that the officer who administered it had been duly elected, setting out his commission and oath of office. When it is averred that persons were acting as a board of election, proof of that fact is all that is required.

4. An indictment for perjury must show the materiality of the matter deposed to, but where it shows that at an election, held in pursuance of law, a person made an offer to vote, and his vote on challenge had been rejected, and thereupon it became material that the defendant should make an affidavit that the person so offering to vote was a resident of the election precinct, and that he did make and swear to such affidavit, this will sufficiently show the materiality of the matter sworn to.

5. PERJURY—*swearing from mere information and belief.* Where a party honestly believes statements made by him in an affidavit, which prove to be untrue, he will not be guilty of perjury, but the jury, in determining the fairness and honesty of that belief, are bound to look to all the evidence showing the circumstances under which the oath was taken; and if, from the evidence, it appears that a reasonable man could not have held an honest belief of the fact sworn to, it will be their duty to find the oath false, and that the defendant intended to swear falsely. The belief of the accused must be reasonable, and not capricious and wilfully entertained without reasonably fair evidence upon which it may be based.

6. ELECTIONS—*residence to entitle person to vote.* The constitutional provision that every person who shall have resided in the State, etc., shall be entitled to vote, means that he must have a permanent abode in the State, county, etc., in which he offers to vote, and hence there is no repugnancy between such provision and the Election law as to the character of his residence.

7. WITNESS—*rule as to disregarding impeached witness' evidence.* There is no well founded distinction in instructing the jury that if they believe, from the evidence, that a defendant has sworn wilfully false as to any of the facts in issue in the case, instead of saying as to any material facts in the case, they

may disregard all his testimony unless corroborated, etc., all facts in issue being material.

8. INSTRUCTION—*should not tell the jury that certain evidence is inadequate.* On the trial of one indicted for perjury in making an affidavit of the residence of a person to enable him to vote, the court instructed the jury that the declarations of the person voting, made to the accused, as to where he resided, or what place he called his home, or where he got his washing done, gave no such knowledge as the law required upon which to enable the accused to base an affidavit as to the voter's residence, etc.: *Held,* that the instruction was erroneous, in invading the province of the jury by telling them the evidence was inadequate to create an honest belief in the accused.

WRIT OF ERROR to the Circuit Court of Ford county; the Hon. OWEN T. REEVES, Judge, presiding.

This was an indictment against Charles Johnson for perjury. The second count of the indictment, omitting the formal parts, is as follows:

"That Charles Johnson, on, etc., at, etc., at a certain election for trustees and village clerk of the village of Gibson, in said county, called and held in pursuance of law, in said village of Gibson, one Oscar Selberg having offered to vote at said election, and his said vote having been challenged by a legal voter at said election, by reason of said challenge his vote was refused by the judges of said election, then and there present, whereby it became material that an affidavit, as required by law, should be made, he, the said Charles Johnson, came in his own proper person before J. B. Goshorn, one of the judges of said election, and then and there produced a certain affidavit of him, the said Charles Johnson, and then and there before the said J. B. Goshorn, judge as aforesaid, in due form of law, was sworn concerning the truth of the matter contained in said affidavit, he, the said J. B. Goshorn, then and there having full power and authority to administer the said oath to him, the said Charles Johnson, in that behalf; and that the said Charles Johnson, being so sworn, then and there upon his oath aforesaid, before the said J. B. Goshorn, who had full power and authority to administer the same as judge of said election, feloniously, wilfully, corruptly and

falsely, in and by his said affidavit, did depose and swear (among other things) in substance and to the effect following, that is to say: that the person whose vote is now offered (meaning the said Oscar Selberg) is an actual and *bona fide* resident of this election district (meaning the said village of Gibson), and has resided herein (meaning said village of Gibson) thirty days next preceding this (meaning said election then and there being held) election, as in and by the said affidavit will at large and more fully appear, it being then and there material that the said Oscar Selberg should be an actual and *bona fide* resident of said village of Gibson, and should have resided therein thirty days next preceding said election, in determining his right then and there to deposit his vote with the judges of said election; whereas, in truth and in fact, as the said Charles Johnson then and there well knew, the said Oscar Selberg, at the time the said Charles Johnson made his oath and affidavit as aforesaid, was not an actual and *bona fide* resident of said election district, and had not resided therein thirty days preceding said election," etc.

Messrs. TIPTON & RYAN, for the plaintiff in error:

The second count in the indictment, the one on which the conviction was had, is defective.

It is not sufficiently averred that the officers of the election were legally constituted and organized according to law to receive all legal votes for the officers to be elected.

It is not averred that Selberg offered to vote for *any of said* officers, or that he did vote for any of them, or that the judges were acting in their official capacity, and that the oath was taken before the judges, etc.

It is not sufficiently alleged that the oath was administered in the village of Gibson. *Vandusen* v. *The People*, 78 Ill. 645.

It is not sufficiently alleged that the judges of the election were so organized and sworn, and that they were acting as such judges as to authorize them, or either of them, as such

judges of election, to administer the oath. *Biggerstaff* v. *The People*, 11 Bush, 169.

There is no averment of facts authorizing the judges to administer the oath in question. Rev. Stat. 460, secs. 67, 68.

The indictment is bad in not averring that Selberg was not known to the judges to have the qualifications mentioned in sections 65 and 66 of the Election law, and in failing to show that Selberg made and subscribed the affidavit required in section 67. The statute requires the affidavit of the person offering to vote as well as that of a witness. *Vandusen* v. *The People*, 78 Ill. 645; *State* v. *Gillmore*, 2 Ind. 374; *Rex* v. *Bishop*, 1 Carr. and Marsh, 302; *Com.* v. *Lodge*, 2 Gratt. 579; *Pollard* v. *The People*, 69 Ill. 148; *Hembree* v. *State*, 52 Ga. 252; *Morrill* v. *The People*, 32 Ill. 499; *The People* v. *Gaige*, 26 Mich. 30.

The indictment fails to aver that the affidavit was knowingly, wilfully, corruptly and falsely made. It omits the word "knowingly." The 80th section of the Election law requires the perjury shall be knowingly made. *Dodge* v. *State*, 4 Zabr. 455; *State* v. *Farran*, 10 Rich. L. (S. C.) 165.

As to who are legal voters, the following authorities were cited: Const. of Ill. art. 7, sec. 1; *Lemoyne* v. *Farwell*, (in contested election cases,) 44 Cong. p. 406; Cooley Const. Lim. 64; *Riner et al.* v. *Farr*, 24 Ark. 161.

As to what is a permanent abode, counsel cited, *Dale* v. *Irwin*, 78 Ill. 181; *Hays* v. *Hays*, 74 id. 312; *Wilkins* v. *Marshall*, 80 id. 74; *City of Beardstown* v. *City of Virginia*, 81 id. 541; *Payne* v. *Town of Dunham*, 74 id. 512; *Duncan* v. *United States*, 93 U. S. 610.

The ninth instruction informed the jury that if they believed Johnson wilfully swore falsely as to any of the facts in issue in the case, they might disregard all of his testimony in the case, unless corroborated by other witnesses or facts proven in the case. It is clearly erroneous, for the reason that it does not limit his evidence to material facts. *Peak* v. *The People*, 76 Ill. 289; *Blanchard* v. *Pratt*, 37 id. 243; *Mixwell* v. *Wil-*

*liamson,* 35 id. 529; *Otmer* v. *The People,* 76 id. 152; *Haines* *The People,* 82 id. 430; *Angelo* v. *Faul,* 85 id. 106.

It also omits the essential element, that the witness had *knowingly* sworn falsely. *Phillips et al.* v. *Moir et al.* 69 Ill. 155; *Brennan* v. *The People,* 15 id. 512; *City of Chicago* v. *Smith,* 48 id. 107.

Mr. JAMES K. EDSALL, Attorney General, for the People.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

An election was held in the village of Gibson, in the county of Ford, in this State, on the 16th day of April, 1878, for the election of trustees and town clerk. One Selberg offered his vote, and, it being challenged, it was rejected, and plaintiff in error filed an affidavit of his residence, to enable him to vote. He was afterwards indicted for perjury, tried, convicted, and sentenced to the penitentiary for one year. To reverse that judgment he prosecutes error.

It is insisted that the second count of the indictment under which the conviction was had is insufficient, and the court below erred in refusing to quash it; that, inasmuch as it is not charged that the affidavit was knowingly made, it is vicious, under the 80th section of the Election law. That section provides, that if any witness sworn under that chapter shall knowingly, wilfully and corruptly swear falsely, he shall be deemed guilty of perjury, etc. The 225th section of the Criminal Code, in defining perjury, omits the word " know-ingly," and only requires the oath to be wilfully and cor-ruptly false; and it is believed that such is the definition of most, if not all, of the criminal codes of the various States of the Union. It is difficult to comprehend how a person can wilfully and corruptly swear falsely without doing so knowingly. The word "wilfully" usually implies intention as well as deliberation and purpose, and if the purpose was to swear falsely, it must follow that it was done knowingly; but

the indictment is sufficient under the 408th section of the Crimininal Code, which provides, that if the presentment be made in the language of the statute, or so plainly that the nature of the offence may be easily understood by the jury, it shall be sufficient; and this presentment complies with that requirement, and must be held good.

It is urged that the second count does not sufficiently aver that the election board was legally organized according to law to receive votes, etc. It does aver that there was a certain election for trustees and village clerk for the village of Gibson, called and held in pursuance of law therein. This is an averment that the board was legally constituted. If it was not, then it would not have been held in pursuance of law. It is also averred that J. B. Goshorn had full power and authority to administer the oath as judge of the election. This averment is comprehensive, and if he was not a judge of the election, he could not lawfully administer the oath; and if the board had not been organized, he would not have been a judge of the election, and would not have had lawful power and authority to swear plaintiff in error.

It requires but a superficial knowledge of pleading to understand that in such a case there need be no averment as to the manner in which the board was organized. It is not required that it be averred who the officer was who administered the oath, and to set it out, or to aver the officer who administered the oath had been duly elected, setting out his commission and oath of office. To require such averments would lead back indefinitely and collaterally, without end, to find a point where it could be absolutely known that the officer acting was undoubtedly legally elected. Where persons are found acting and performing the functions of public officers, the law presumes that they are rightfully acting, and proof is not required of that fact in any collateral proceeding. These persons were acting, it is averred, as an election board, and proof of that fact was all that was required, and all know that the proof must never be more limited than the

averment. The one must be as broad and no broader than the other. This count in this respect was sufficient.

It is, however, insisted that the count was bad under the decision in the case of *Morrill* v. *The People*, 32 Ill. 499. This indictment is by no means artificially drawn, but we think it is not obnoxious to the objection that existed in *Morrill's case.* There, no averment was made that there was pending a proceeding when the affidavit was made in which it could be used, or that any such proceeding afterwards existed. It, in that case, did not charge that a motion for a continuance had been made, or was ever made, and if no such motion was pending, or was afterwards made, there was no lawful occasion for making the affidavit. But here, it is averred that Selberg had offered to vote and his vote had been rejected, and that thereupon it became material that plaintiff in error should make an affidavit that Selberg was a resident of the election precinct, and that he did make and swear to it. This, we think, avers and shows its materiality. It shows the effort to vote was made and disallowed, and the law then required that a voter of the precinct should make such an affidavit before he could vote. There is nothing showing Selberg had withdrawn his application. Hence its materiality is shown. In that case it was not, nor could it be, material until it was shown a matter was pending in which it could be lawfully used, and none such was shown. But here, the matter is shown to have been before the election board, and Selberg could not vote until such an affidavit was made and presented to the board. Hence its materiality. The lawful occasion is, we think, sufficiently averred.

It is also urged that the court erred in its definition of the word resident. It is not objected that the instruction does not follow the statute, but it is claimed that the statute is unconstitutional. The 66th section of the Election law defines a residence to be a permanent abode. The first section of article seven of the organic law declares that every person who shall have resided in the State, etc., for the periods

named, and being a citizen, etc., shall be entitled to vote. It is claimed that the terms residence, and permanent abode, are entirely different, and the latter term requires more than the former. But in the case of *Spragins* v. *Houghton,* 2 Scam. 377, the court said : " Every man is a resident who has taken up his permanent abode in the State." We must presume the framers of the constitution used the word in the sense in which it had been defined in that case. There was, therefore, no error in instructing the jury that Selberg must have had a permanent abode in the village to have such a residence as entitled him to vote, as the law is not repugnant to the fundamental law of the State.

It is urged that the court erred in giving the first and second instructions for the people. They state that "declarations made by Selberg to Johnson as to where he resided, or what place he called his home, or where he got his washing done, gave no such knowledge as the law requires upon which to base an affidavit that Selberg had resided there thirty days next preceding said election, or that he, said Selberg, was an actual *bona fide* resident there. If plaintiff in error honestly believed, as he stated in his affidavit, that Selberg was a *bona fide* resident of the election district and had been for thirty days, then he was not guilty of wilful and corrupt perjury. But the jury, in determining the fairness and honesty of that belief, were bound to look to all of the evidence showing the circumstances under which the oath was taken. If from the evidence it appeared that a reasonable man could not have held an honest belief of a *bona fide* residence, then they would be compelled to find the oath false and that he intended to swear falsely. A man can not corruptly swear falsely and shield himself from the penalty of perjury by stating in his affidavit that he believes his statement to be true, nor can he escape by showing slight facts which are insufficient to create a reasonable belief. If, on the consideration of all the evidence, the jury believe that it was only a pretence that he believed statements of others, which are

contradicted by other circumstances, they should give no weight to such pretences. A person has no right to act recklessly, shut his eyes to facts and evidence and wholly ignore them, and then escape the consequences of his reckless disregard of truth by pretence that trifling facts, improbable statements of others, and evidence that could convince no one, had led him to believe that his statements are true.

All know that we can not look into and inspect the mind of another, but we can judge of his motives by his acts. And it is true that this is a crime hard to establish, but the motives may be established by the circumstances under which accused takes the oath. On the truth or falsehood of evidence all of our rights depend. By false evidence all rights, whether of life, liberty, reputation or property, depend. Hence the crime has been denounced as the most infamous and detestable. Persons may guard and protect themselves against most other crimes, but against this they have and can have no security. And to permit persons to escape on a mere pretence that they believed the false statements, is highly calculated to subject all classes of persons to the most grievous wrongs. The belief of the accused should be reasonable, and not capricious and wilfully entertained without reasonably fair evidence upon which it may be based. But in these instructions the court invaded the province of the jury by telling them the evidence was inadequate to create an honest belief in the accused. That was for the jury to determine and not for the court.

Objections are made to the people's ninth instruction. It is insisted that it is not sufficiently limited. By it the jury are told that if they believed the defendant swore wilfully false as to any of the facts in issue in the case, they might disregard all of his testimony unless corroborated, etc. It is claimed that they should have been instructed that he so swore as to some material fact, before they might disregard his evidence unless corroborated. We are unable to perceive any well founded distinction in telling them that the evidence

must be wilfully false as to any of the facts in issue, and as to material facts in the case. All facts in issue are undoubtedly material, because the whole case depends upon the facts in issue. There was no error in giving this instruction.

But for the error indicated, the judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*