(No. 25551.—

Henry Park, Appellee, *vs.* Floyd Hood, Appellant.

*Opinion filed April 17, 1940—Rehearing denied June 12, 1940.*

FARTHING and MURPHY, JJ., dissenting.

ERNEST G. UTTER, FRANKLIN D. GARRISON, and ROSWELL B. O'HARRA, for appellant.

FRANK W. BYRNS, PAUL W. MOURNING, BURNETT M. CHIPERFIELD, CLAUDE E. CHIPERFIELD, and ROBERT B. CHIPERFIELD, for appellee.

Mr. CHIEF JUSTICE WILSON delivered the opinion of the court:

On April 4, 1939, an election was held for the office of commissioner of highways of Frederick township, in Schuyler county. Henry Park was the Republican candidate and Floyd Hood the nominee of the Democratic party. The official canvass disclosed that Hood received 116 votes and Park 115. Park filed a petition in the county court

of Schuyler county to contest the election. Hood answered the petition. After hearing evidence and a recount of the ballots, the court found that 110 legal ballots were cast for each candidate; that six absentee ballots for each candidate were not initialed and should not be counted; that no ballots were improperly marked or bore distinguishing marks; that of ten persons alleged by Hood to have been disqualified voters seven were qualified, three not qualified, and that, therefore, three votes should be deducted from Park's 110 votes; that six persons alleged by Park to have been disqualified voters were not qualified; that they voted for Hood and that their votes should not be counted. Accordingly, the court found that Park received 107 and Hood 104 votes and the former was declared to be the legally elected commissioner of highways. Hood prosecutes this appeal.

To obtain a reversal of the judgment, the appellant, Hood, attacks the qualifications of voters Alice Abbott, Charles Abbott, Sarah Stevens and Mabel Adkinson. The appellee, Park, to sustain the judgment, maintains that each of these four persons had a residence for voting purposes in Frederick township on April 4, 1939. Alice Abbott, twenty-one years of age, is a daughter, and Charles Abbott, a son, of Ross and Zetta Abbott, whose qualifications as voters were likewise assailed by appellant. He does not, however, challenge the correctness of the trial judge's decision that the parents are qualified voters of Frederick township. Ross Abbott owns a house in Frederick and, prior to July 5, 1937, together with his family, consisting of his wife, their five children and Abbott's father, resided on the premises. On the day named, Abbott and his family, with the exception of his father, moved to Beardstown, in Cass county, four miles distant, in order to afford his three older children, Charles, Alice and Laura, an opportunity to obtain employment. Abbott himself has since been employed in Beardstown. The record does not disclose

whether Alice obtained employment, or, indeed, whether she actually sought employment in Beardstown, or elsewhere. Ross Abbott testified that his house in Frederick was furnished; that he maintained a garden on his property each year; that he went to Frederick three or four times a week, and that his wife and children accompanied him on some of these trips. He specifically stated that Alice resided in his home as a member of his family. Charles Abbott lived in Frederick with his parents prior to 1937. He testified that it was his purpose to maintain his residence with his father as a member of his family when he went to Beardstown. Following his marriage on June 20, 1938, Charles and his wife lived with his parents until July 5, 1938, when they established their own household. He and his wife resided at their new place of abode until December 11, 1938, when they separated. They did not live together until June 17, 1939. During the interim, Charles resided with his father as a member of his family and in February, 1939, being then unemployed, returned to Frederick and lived with his grandfather in his father's house until June. From June to the time of the trial, he and his wife occupied another house in Frederick. Charles testified that he had never voted in any place except Frederick; that, in particular, he voted there in the November, 1938, election, claiming Frederick as his home and place of residence, and that since then he had never claimed any other place as his legal residence.

Sarah Stevens lived in Frederick with her first husband and a son, Albert Shebiel, was born there. She testified that Frederick had been her place of residence for more than thirty-two years. After the death of her first husband she was married to Howard Stevens and they lived together in Beardstown for several years. While living with her second husband Mrs. Stevens voted in Beardstown. In May, 1938, having separated from her husband, she returned to Frederick and lived with her son and his wife as

a member of their household until March 27, 1939. On the day last named, Shebiel went to Ohio seeking employment, his wife and children moved to her mother's house in Frederick and his mother, Mrs. Stevens, went to Beardstown in order to find work. She testified further that she and her husband were still living apart; that it was her purpose, however, to continue her legal residence in Frederick; that she intended to make her home there, and that she had never changed her purpose or intention. It further appears that since her mother's death on February 9, 1939, Mrs. Stevens owned a house in Frederick as a tenant in common with her brother and two sisters. The evidence also discloses that the appellant and his campaign assistant, Ed Lawler, visited Mrs. Stevens prior to the election soliciting her vote. Lawler learned that the appellee, Park, had already made arrangements to take her to the polls. The witness stated that his object in visiting Mrs. Stevens was to solicit her vote "on the theory she was a resident of Frederick township."

Mabel Adkinson resided in Bainbridge township, in Schuyler county, until March 7, 1936, when her husband died. Subsequently, she went to Frederick and lived with her brother, Henry Park. She stored her household furnishings in Bainbridge. Two years later she moved a portion to Beardstown and took part to her brother's house. She arranged with her brother to make her home with him in Frederick whenever she could. Park corroborated her testimony in this regard, testifying that he and his sister had an arrangement whereby she could claim his residence in Frederick as a home for herself and her two young children whenever she desired so to do. The evidence shows that she has, at various times, availed herself of this privilege. It also appears that she sometimes lived with her sister in Frederick. Mrs. Adkinson sought and obtained household work in Beardstown, but did not succeed, however, in obtaining employment sufficiently remunerative to

support herself and her children. She testified that during the entire time her work required her to be absent from Frederick it had been her intention to make the township her permanent home; that she intended to send her children to school in Frederick during the next school year; that she had voted in Frederick at every election but one since she went away; that she had never voted anywhere else and had never claimed any other place as her legal residence.

The trial judge held each of the four persons previously named, Alice Abbott, Charles Abbott, Sarah Stevens and Mabel Adkinson, to be qualified voters.

The appellant claims that George Reyburn, Elizabeth Reyburn, Leo Walters, Margaret Walters, Charles Murphy and Ida Murphy, whom the trial court found were not legal residents of the township on the day of the election, were qualified voters and that their votes should have been counted for him. George Reyburn and his wife, Elizabeth, had resided in a house in Frederick which they were purchasing from the Beardstown Building and Loan Association. Unable to make the required payments on the house owing to his unemployment, Reyburn and his wife surrendered possession of the property and deeded the premises to the association. They could not obtain a house or living quarters in Frederick and moved to Rushville on March 2, 1939, taking their furniture with them. According to the testimony of Mrs. Reyburn, since the day last named, she and her husband have had no place of residence in Frederick and have been living with the latter's brother in Rushville, and "that is the only place of abode we have had since we left Frederick." Reyburn testified that neither he nor his wife intended to give up their permanent abode in Frederick when they departed.

From the testimony of Walters, a coal miner, it appears that he and his wife resided in Frederick township until March 10, 1939, when they moved to his father's residence

in Bainbridge township. Walters was not then employed and, according to his testimony, was unable to pay rent, moved voluntarily, "took my furniture and after that had no residence in Frederick township." He declared that he intended to move back if he could obtain work when the coal mines resumed operations.

Charles Murphy and his wife, Ida, moved to Frederick in 1913 where they resided until August 30, 1938. In 1922, he entered the employ of the Chicago, Burlington and Quincy Railroad Company at Frederick. Prior to August 1, 1938, he and his wife rented a house from one Lawler. The house was sold, the tenants were requested to move and they did move to another house. This second house did not meet their requirements. Murphy and his wife endeavored, without success, to find another house or rooms in Frederick. They moved to Beardstown August 30, 1938. Murphy had never owned property in Frederick, but always rented. When he moved he continued in the employ of the railroad company as a watchman in Beardstown. Murphy testified that it was not his intention to give up his permanent abode in Frederick when he moved to Beardstown, and, further, that he had never given up his intention to return, if adequate living quarters could be obtained, adding that he and his wife had placed a bid on a house in Frederick belonging to one Brennen and intended to return under their option, if the house became vacant. The votes of Murphy and his wife were challenged at the polls by one of the judges of the election who made the inquiry, among others, if they owned any property in Frederick. To this Murphy replied, "No, you know I don't have anything here." When further interrogated as to why he desired to vote Murphy answered, "I don't know anybody running in Cass county on the ticket there and, for that reason I come over here to vote."

Section 65 of the General Election law, (Ill. Rev. Stat. 1939, chap. 46, par. 65, p. 1423,) identical with section 1

of article 7 of our constitution, provides: "Every person having resided in this State one year, in the county ninety days, and in the election district thirty days next preceding any election therein, * * * who shall be a male citizen of the United States, above the age of twenty-one years, shall be entitled to vote at such election." Section 66 prescribes that a permanent abode is necessary to constitute a residence within the meaning of the preceding section. It is well settled that the terms "residence" and "permanent abode," as employed in the statute, are synonymous. (*Johnson* v. *People,* 94 Ill. 505; *Dale* v. *Irwin,* 78 id. 170.) A real and not an imaginary abode, occupied as his home or dwelling, is essential to satisfy the legal requirements as to the residence of a voter. One does not lose a residence by temporary removal with the intention to return, or even with a conditional intention of acquiring a new residence, but when one abandons his home and takes up his residence in another county or election district, he loses his privilege of voting in the district from which he moved. (*Pope* v. *Board of Election Comrs.* 370 Ill. 196; *Stevenson* v. *Baker,* 347 id. 304; *Welsh* v. *Shumway,* 232 id. 54; *Dorsey* v. *Brigham,* 177 id. 250; *Carter* v. *Putnam,* 141 id. 133.) The question of residence is largely one of intention, and a voter is competent to testify as to his intention, although such testimony is not necessarily conclusive. *Bullman* v. *Cooper,* 362 Ill. 469; *Anderson* v. *Pifer,* 315 id. 164.

From the testimony narrated it appears that each of the four voters whose qualifications are challenged by the appellant had a place of residence in Frederick township; that it was their intention to return to Frederick and occupy these residences as their respective abodes. In particular, Alice Abbott, a young unmarried woman, was living as a member of her father's family. The latter, it is now conceded, was a qualified voter in Frederick township despite the fact that he was actually residing in Beardstown on April 4, 1939, the day of the election. The law does not

require the daughter to establish a separate and independent residence under the circumstances recounted. Similarly, Charles Abbott was a member of his father's household, actually lived with him in Frederick, and later in Beardstown and when he came back to Frederick returned to the family dwelling. His acts with respect to residence square with his expressed intention of making Frederick his permanent abode. Sarah Stevens was living separate and apart from her husband and her intention, according to her own testimony, was to make her home in Frederick. Not only was this her intention but she owned a one-fourth interest in a residential property and, incident thereto, enjoyed the right to occupy the property on April 4, 1939. Mabel Adkinson not only made arrangements to live in Frederick, if circumstances permitted, but through the hospitality of her brother she and her small children did actually occupy his home from time to time. On the other hand, not one of the six voters challenged by the appellee had an actual place of abode of any kind or description in Frederick township on the day of the election. It is true that some of these persons expressed an intention of returning to Frederick. The fact remains that on April 4, 1939, even though they hoped to be able to again establish a residence in Frederick, they had no place of residence there to which they could return. It is unnecessary to decide whether these six persons were domiciled in Frederick for the reason that domicile and residence are not synonymous. Mere proof that their domicile had been retained in Frederick would be insufficient to enable them to vote. We have recently held it is necessary that a voter show a place of residence or permanent abode for the requisite statutory period in the precinct in which he seeks to vote, which he has not abandoned but which he occupies as an abode, or to which he intends to return. (*Pope* v. *Board of Election Comrs. supra.*) The place of actual abode of George and Elizabeth

Reyburn, on April 4, 1939, was in Rushville, in Rushville township; of Leo and Margaret Walters, in Bainbridge township, and of Charles and Ida Murphy, in Beardstown. They had changed their former residences by actual abandonment and were, hence, precluded from claiming residence for voting purposes in Frederick township on April 4, 1939.

The finding of the trial judge who saw and heard the witnesses in a proceeding to contest an election will not be disturbed on appeal unless it is palpably against the manifest weight of the evidence. (*Dirst* v. *McDonald,* 372 Ill. 498; *Rogers* v. *Meade,* 363 id. 630; *Bullman* v. *Cooper, supra; Baker* v. *Hinrichs,* 359 Ill. 138.) We cannot say that the trial court's finding, that the ballots of the voters challenged by the appellant were legally cast, was palpably against the manifest weight of the evidence. Nor can it be said the finding that the ballots of the six persons challenged by the appellee were illegally cast fails to meet the same test.

The appellant's concession in his brief that the question of the proper preservation of the ballots is material only in the event of a tie vote is, in effect, a waiver of his contention that the integrity of the ballots was not preserved.

The judgment of the county court is affirmed.

*Judgment affirmed.*

FARTHING and MURPHY, JJ., dissenting:

We cannot agree with what is said in the majority opinion holding Charles Abbott and Sarah Stevens to be qualified voters of Frederick township in Schuyler county. July 5, 1937, Charles Abbott moved from Frederick with his parents to Beardstown. Later he was married, and July 5, 1938, he and his wife established a home in Beardstown, separate and apart from the residence of his parents. He was then the head of a household and by such act abandoned all claim to his former residence in Frederick. In Decem-

ber, 1938, after he and his wife separated, he returned to the home of his parents in Beardstown and resided there until February, 1939, when he returned to Frederick. From July 5, 1938, to the date of his return to Frederick, he had no abode in Frederick and to become a qualified voter in that county, a ninety-day residence was required. He did not meet this qualification at the time of the election.

Sarah Stevens resided in Beardstown with her husband until May, 1938. From that date until the election, they did not reside together but it does not appear from the evidence that their relations were adverse. In law, the residence of the husband is the residence of the wife and will so continue until it is shown they are living separate and apart and their relations adverse. *Stevenson* v. *Baker*, 347 Ill. 304; *Cooper* v. *Beers*, 143 id. 25.

Neither can we agree with the majority opinion holding George and Elizabeth Rayburn and Leo and Margaret Walters were not qualified voters in Frederick township. The evidence of the intention of the Rayburns and Walters to return to Frederick and make that place their home is in all essentials the same as the intent expressed by other voters whose votes were questioned by appellant, and yet the majority opinion holds one group disqualified and the other qualified, the only difference being that the Rayburns and Walters did not have an interest in real estate in Frederick, a house to which they could return or a relative residing in Frederick who proposed they might reside with them. Such a distinction injects a new qualification into the requirements of the statute and is contrary to the holdings of this court in *Widmayer* v. *Davis*, 231 Ill. 42; *Kreitz* v. *Behrensmeyer*, 125 id. 141.