MELVIN DELK, Plaintiff-Appellant, *v.* THE BOARD OF ELECTION COMMISSIONERS OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 83—267

Opinion filed February 9, 1983.

Thomas F. Geselbracht, Robert W. Gettleman, and James A. Geocaris, all of Chicago, for appellant.

Michael Levinson, of Chicago, for appellee Board of Election Commissioners of the City of Chicago.

Hardy & Young, of Chicago (LaQuetta J. Hardy, of counsel), for appellee Iola McGowan.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Melvin Delk filed a petition with the Board of Election Commissioners (hereinafter the Board) of the city of Chicago objecting to the nomination papers of respondent Iola McGowan. The Board granted respondent's motion to overrule the objections, and petitioner appeals the trial court's affirmance of that decision.

On January 10, 1983, petitioner, a registered voter of the 29th Ward of the city of Chicago, filed the petition with the Board objecting to the nomination papers of respondent for election to the office of alderman of that ward. The petition alleged that respondent was ineligible because she did not reside in the 29th Ward; that her nomination papers were insufficient because they falsely asserted residency at 5839 Midway Park; and that her statement of candidacy was false, fraudulent and perjurious because it stated that she was a qualified registered voter residing at the Midway Park address. Petitioner alleged that respondent was not a resident at 5839 Midway Park either at the time she filed her nomination papers and statement of candidacy or at the time she registered to vote at that address. Petitioner requested that respondent's name be stricken from the list of candidates for alderman, and that her name not appear on the ballot.

On January 14, 1983, the Board conducted a hearing on the objections. Respondent, called by petitioner as an adverse witness, testified that she executed a contract for the purchase of the Midway Park premises from the United States Department of Housing and Urban Development (HUD) in July 1982. She abandoned her then permanent abode at 3835 West Arthington Street at the end of August 1982 and moved into the Midway Park premises on September 1, 1982. She brought along furniture and clothes. On September 9, 1982, she changed the address on her driver's license to 5839 West Midway Park. On October 5, 1982, she registered to vote at the new address. The closing for purchase of the premises occurred on November 9, 1982, and at that time the majority of windows were boarded up. It was not until November that respondent filed for a change of address for mail delivery.

Respondent testified that, although she had no gas, electricity, or phone service until November, she was spending four or five nights a week there during September and October. Other nights she spent at the homes of relatives. She used portable lights and a kerosene stove for heat. Her husband, Adam McGowan, was working on the premises and spent even more time there during these months. Work done

included a new roof, downspouts, gutter work and garage repair. They also made internal changes. They had a couch, table, a few chairs, a television set and a crockpot for cooking. Respondent stated that she had emergency electrical service which would become permanent after certain electrical repair was completed.

Petitioner introduced an affidavit, dated January 13, 1983, by the custodian of Commonwealth Edison's record of customer electrical service, asserting that there was no record of electrical service to the Midway Park premises for 1982.

Petitioner also introduced photographs of the premises which were taken on December 31, 1982. Most of the windows were boarded up and at least one was broken. The photographer, Arthur Turner, testified that he knocked at the door around 11:30 a.m. on December 31 but there was no answer. He also was at the premises earlier in December and again one week prior to the hearing.

Three neighbors testified as to their own observations. All three passed the premises at various times on a daily basis. None had ever observed any lights. In mid-November one witness noticed that some of the boards had been removed from a few windows and that a workman was going in and out to a small pickup truck. Another witness stated that the roof was being repaired in mid-December. All three witnesses testified to a statement by respondent's adult son at a block club meeting in late November that respondent was trying to get into the Midway Park residence by the holidays but that she probably would not be able to take up residence there until after the first of the year.

At the close of petitioner's case, respondent's motion to certify her candidacy was granted by the Board. On January 18, 1983, petitioner sought to reopen the hearing based upon newly discovered evidence. The evidence consisted of an affidavit from a HUD inspector indicating that he had inspected the property several times during September and October, 1982, and found it completely empty and unoccupied. In requesting that the hearing be reopened, petitioner stated that he was diligent. The HUD documents were not delivered until a few minutes before the hearing, and petitioner did not learn the name of the HUD inspector until the day after the hearing.

In a letter of January 19, 1983, the Board denied petitioner's motion to reopen the hearing on the ground that its decision was final subject to judicial review (Ill. Rev. Stat. 1981, ch. 46, par. 10—10), and the Election Code makes no provision for rehearing.

On January 26, 1983, the trial court upheld the decision of the Board, finding that it was not against the manifest weight of the evi-

dence. It held that the Board's exclusion of certain evidence was not prejudicial to petitioner and that the Board had properly refused to reopen the hearing.

On appeal petitioner contends that the Board's refusal to consider the motion to reopen the hearing violated due process; that the Board applied an improper standard in determining that petitioner had not presented a *prima facie* case that the respondent's registration and residency were false; and that the Board erred in excluding certain evidence offered by petitioner.

We first address petitioner's contention that the Board erred in excluding relevant evidence. The Board excluded certain real estate documents as irrelevant and other exhibits showing respondent's or her husband's residence at other addresses as having no bearing on the issue before it.

The issue was whether respondent resided at the Midway Park address from October 5, 1982, through December 27, 1982, when she filed her statement of candidacy. On December 27, respondent asserted under oath that she was a qualified registered voter at the Midway Park address. Since she had registered at the Midway Park address on October 5, a finding that she was qualified registered voter was essential to validate her statement of candidacy and required a finding that she did in fact reside at the Midway Park address not only on December 27, but also on October 5. Ill. Rev. Stat. 1981, ch. 46, par. 3—1.

■■ Under the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 3—2), for voting purposes residence means permanent abode, a person's principal dwelling place. Two elements are necessary to create a residence: physical presence and intent to remain there as a permanent home. (*Stein v. County Board of School Trustees* (1967), 85 Ill. App. 2d 251, 229 N.E.2d 165, *aff'd* (1968), 40 Ill. 2d 477, 240 N.E.2d 668.) Although declarations of intent are admissible as evidence thereof, acts and surrounding circumstances should be given more weight in making the factual determination of intent. (*Miller v. Police Board* (1976), 38 Ill. App. 3d 894, 349 N.E.2d 544; *Stein v. County Board.*) Consequently we believe that the Board improperly excluded circumstantial evidence presented by the petitioner which was relevant to the issue of respondent's residency on the dates in question.

Petitioner presented a HUD circular offering for sale several properties, including 5839 Midway Park, stating as a condition of the offer of sale that "[n]o one is to enter the property to make repairs or to rehabilitate it until after the sale is closed and the deed is re-

corded." The Board found the evidence to be irrelevant on the issue of whether the candidate actually resided there prior to the closing. While not conclusive proof on the issue, the document constituted probative evidence and should have been considered and weighed against conflicting statements made by respondent.

Other rejected evidence included a HUD appraisal of the property, dated August 1981, which concluded that the property was not habitable in its present condition. Because of its date, the appraisal was of less probative value. Nevertheless, since respondent purchased the property directly from HUD one year later, the appraisal has relevance to the question of whether respondent could have resided in the premises prior to the repairs being made.

The Board excluded circumstantial evidence that respondent and her husband resided at another address during the time in question. The Board rejected the husband's driver's license which showed his residence to be another address, and it rejected utility records which indicated service to the respondent at another address and a different mailing address for respondent and her husband. We do not agree with the Board's finding that evidence in regard to the husband's residence was not relevant. In light of respondent's testimony that she and her husband lived together, evidence of another residence for the husband was relevant on the question of respondent's residence. *Connelly v. Gibbs* (1983), 112 Ill. App. 3d 257; *Miller v. Police Board.*

■ We likewise reject the Board's position that evidence of other residences is irrelevant because, "for the purpose of a right to maintain a voter registration," a person can have "more than one residence." We do not believe that a person may have a permanent residence in two places at the same time. (*Anderson v. Pifer* (1924), 315 Ill. 164, 146 N.E. 171; *Stein v. County Board of School Trustees*; *Miller v. Police Board.*) Consequently, evidence of other residences was relevant and should have been considered and weighed against the candidate's own assertion of residence at 5839 Midway Park.

■ Although the exclusion of any one of these documents may not have unduly prejudiced petitioner, we find that the cumulative effect of their exclusion was sufficiently prejudicial to warrant a new hearing. While the Board had no authority to grant the rehearing requested by the petitioner based on newly discovered evidence (*Pearce Hospital Foundation v. Illinois Public Aid Com.* (1958), 15 Ill. 2d 301, 154 N.E.2d 691; *Oliver v. Civil Service Com.* (1967), 80 Ill. App. 2d 329, 224 N.E.2d 671), in view of our findings, the Board will be able to grant a full and immediate hearing on the objections.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and the cause is remanded to the Board of Election Commissioners of the City of Chicago for a hearing on petitioner's objections.

Reversed and remanded.

O'CONNOR and WHITE, JJ., concur.