DAVID W. DILLAVOU *et al.*, Petitioners-Appellants and Cross-Appellees, v. COUNTY OFFICERS ELECTORAL BOARD OF SANGAMON COUNTY *et al.*, Respondents-Appellees and Cross-Appellants.

Fourth District    No. 4—94—0205

Argued March 8, 1994.—Opinion filed April 21, 1994.—Rehearing denied May 19, 1994.

LUND, J., dissenting.

Charles J. Gramlich, of Gramlich Law Offices, P.C., of Springfield, and Merle L. Royce (argued) and Marshall J. Burt, both of Law Offices of Merle L. Royce, of Chicago, for appellants.

James Grohne, Assistant State's Attorney, of Springfield, for appellee County Officers Electoral Board of Sangamon County.

Thomas F. Londrigan (argued), of Londrigan, Potter & Randle, P.C., and Donald M. Craven, of Donald M. Craven, P.C., both of Springfield, for appellee Michael D. Curran.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

In December 1993, candidate Michael D. Curran filed nominating papers with the State Board of Elections for the office of State representative from the 100th district. Petitioners, who are residents of the 100th district, filed objections to the nominating papers contending, among other things, that Curran was not a *bona fide* resident of the 100th district. Three days of hearings on the objectors' petition were held before the three-member County Officers Electoral Board of Sangamon County (Electoral Board), which denied the objections. Curran's name was subsequently certified for placement on the Democratic ballot for the March 15, 1993, primary.

Petitioners appealed the Electoral Board's decision to the circuit court which, after hearing, entered an order on February 28, 1994, finding that the Electoral Board's determination that Curran was a resident of the 100th representative district was not against the manifest weight of the evidence.

On March 2, 1994, petitioners filed their appeal of that decision with this court and sought an expedited hearing. Respondent Curran filed a cross-appeal and a motion to dismiss challenging the jurisdiction of both the circuit court and the Electoral Board to adjudicate the question of his residence.

Because of the imminence of the pending primary election and the need for a prompt decision, we allowed petitioners' motion for an expedited appeal and took the case under submission on the basis of trial briefs filed by the parties and the record before the Electoral Board and circuit court. On March 8, 1994, this court heard oral argument and subsequently issued a summary, oral order affirming the judgment of the trial court and indicated that an opinion on this matter would issue at a later date. We now deliver that opinion.

The facts giving rise to the dispute over Curran's residency are as follows. Curran is the incumbent Democratic State representative from the 100th House District. He was originally elected as a representative from the 99th House District in 1982 and stood for reelection in that district through the 1990 election. In 1991, the legislative districts were reapportioned pursuant to constitutional mandate. (Ill. Const. 1970, art. IV, § 3.) As a result of boundary changes, Curran's Springfield home at 1040 Woodland (Woodland) is no longer in the territory encompassing the district from which he was elected. Because the redistricting process was not completed until early 1992, however, Curran was able to run for election in the 100th district (which contains a majority of his former district) despite the fact that he now lived in the newly constituted 99th district. Curran knew, however, that to qualify for reelection in the 100th district in 1994 he had to establish residence in the 100th district at least 18 months prior to the 1994 general election. Ill. Const. 1970, art. IV, § 2(c).

As late as December 1993 Curran was considering a candidacy for Congress or the State Senate in addition to his reelection in the 100th district. Curran had no intention of running in the 99th House District, however, because another Democrat had captured that seat in the 1992 election.

Curran and his wife, Cathy Tasner Curran, are the parents of three boys, ages 6, 7, and 11. Curran's two youngest children attend the Butler Elementary School and are in kindergarten and second grade, respectively. The oldest child is in the sixth grade at the Iles Middle School. When Curran decided to run for reelection, he and his wife began looking for a new residence in the 100th district which was also within the Butler and Iles school districts. Maintaining the younger children in the Butler school was extremely important to the Currans because they were familiar with the teachers and were very satisfied with the education which the school provided their children.

In February 1993, the Currans made a bid to purchase a home which was within both the 100th House District and the Butler school district. The owners of the property, however, did not accept the offer and the Currans abandoned any hope of consummating the sale in April 1993 when the sellers did not make a counteroffer.

Curran realized that he had only a short time to take up residence in the 100th district to qualify to become a candidate for his House seat. He then rented a townhouse apartment in the 100th district from a friend at 2272 Concord (Concord) at the end of April 1993 and moved in prior to May 3, 1993. Curran's wife and children remained at the Woodland address, however, and had no intention of

moving into the townhouse with him. They planned to reunite when a suitable home could be purchased. The Concord address was not within the Butler school district. Curran conceded that he did not provide a security deposit or execute a lease on the Concord property but rented it from month to month. He advised the owners that he was looking for a more permanent home and did not expect to be in the apartment for an entire year.

Curran subsequently purchased a house at 441 Jackson Parkway (Jackson), one block from the State Capitol, in September 1993. This home is also within the 100th district but not within the Butler school district. Curran testified that the principal reason for purchasing the Jackson property was its proximity to his office at the Capitol. Secondarily, Curran wanted to establish, "absolutely," that he maintained a residence in the 100th district. Curran's wife and children still live in the Woodland property and continue to look for a suitable residence which is within both the 100th House District and the Butler school district.

Curran's wife testified to the same basic facts. Maintaining a residence within the Butler school district was an extremely important concern for the family and neither she nor the children ever intended to occupy the Concord or Jackson property.

In support of their contention that Curran had not established permanent residence within the 100th district within the meaning of the constitution prior to May 8, 1993 (18 months before the general election), petitioners offered evidence that Curran conceded that his occupancy of the Concord apartment was "temporary"; Curran's wife and children continue to reside in the Woodland home and had no intention of ever occupying the Concord or Jackson residence; even after moving into the Concord and Jackson properties, Curran continued to spend, by his own estimation, at least 40% to 50% of his time with his family at the Woodland residence; and Curran continued to use the Woodland address for certain "residential" purposes such as telephone listings, the children's school records, utilities, and a joint checking account he maintains with his wife. In addition, petitioners presented evidence that the Currans made conflicting representations to banking officials in conjunction with the execution of loan applications and mortgages when they purchased the Jackson property and refinanced the Woodland residence in the fall of 1993 as to whether the Woodland address was their principal residence and whether they intended to occupy it as such. Petitioners also point out that although the Currans testified they continue to search for a suitable residence, they executed a listing agreement with a realtor for sale of the Woodland property in

January 1992 but did not permit a "For Sale" sign to be placed on the property. In addition, at the direction of the Currans, the home was never shown to prospective buyers nor placed in the multiple listing service.

In petitioners' view, the most significant evidence supporting the contention that Curran never intended to abandon the Woodland residence and failed to establish a permanent residence within the 100th district prior to May 8, 1993, is the fact that Curran admitted that his occupancy of the Concord apartment was only "temporary," Curran's wife and children continue to live in the Woodland home and, by his own estimates, Curran spends between 40% to 50% of his time at the Woodland home.

■ At the outset we are confronted with the question of the proper standard of review. Petitioners contend the facts are not in dispute and, for that reason, the legal effect to be given them becomes a matter of law. (*Walgreen Co. v. Selcke* (1992), 230 Ill. App. 3d 442, 448, 595 N.E.2d 89, 93.) Respondents counter that issues as to whether a person is a registered voter and whether the person is registered at the address indicated on the nominating petition are questions of fact. (*Benjamin v. Board of Election Commissioners* (1984), 122 Ill. App. 3d 693, 696, 462 N.E.2d 626, 628; see *Greene v. Board of Election Commissioners* (1983), 112 Ill. App. 3d 862, 869, 445 N.E.2d 1337, 1343.) For that reason, a decision of the Electoral Board should not be reversed unless it is against the manifest weight of the evidence. *Serwinski v. Board of Election Commissioners* (1987), 156 Ill. App. 3d 257, 261, 509 N.E.2d 509, 511; *Benjamin*, 122 Ill. App. 3d at 696, 462 N.E.2d at 628; *McCullough v. LaVelle* (1986), 141 Ill. App. 3d 983, 986, 491 N.E.2d 82, 84.

While there may be situations in which undisputed facts give rise to questions of law, that situation is not present here. The supreme court has stated a question of law is presented when there is no dispute as to factual matters and no conflicting inferences may be drawn therefrom. (*Newgard v. Industrial Comm'n* (1974), 58 Ill. 2d 164, 170, 317 N.E.2d 524, 528.) As the case before us demonstrates, conflicting inferences may be drawn from the "undisputed facts" surrounding Curran's occupancy and intentions with respect to the Concord townhouse. For that reason, we reject petitioners' argument. The procedure for judicial review provided in section 10—10.1 of the Election Code (Ill. Rev. Stat. 1991, ch. 46, par. 10—10.1), while not expressly equivalent, is substantially the same as that provided by the Administrative Review Law (Ill. Rev. Stat. 1991, ch. 110, pars. 3—101 through 3—112) and the court is required to take a deferential approach to the factual findings made on disputed issues. (*Serwinski*,

156 Ill. App. 3d at 261, 509 N.E.2d at 511.) Review of the Electoral Board's decision on such questions of fact does not extend to a *de novo* assessment of the evidence. *Benjamin*, 122 Ill. App. 3d at 696, 462 N.E.2d at 628.

■ Under the Election Code, a permanent abode is necessary to constitute a residence. (Ill. Rev. Stat. 1991, ch. 46, par. 3—2.) In addition, article IV, section 2(c), of our constitution requires that a candidate for the General Assembly must be a resident of the district he will represent for two years preceding the election. (Ill. Const. 1970, art. IV, § 2(c).) An exception is made following redistricting. In a case such as the one before us:

> "[A] candidate for the General Assembly may be elected from any district which contains a part of the district in which he resided at the time of the redistricting and reelected if a resident of the new district he represents for 18 months prior to reelection." Ill. Const. 1970, art. IV, § 2(c).

In *Stein v. County Board of School Trustees* (1967), 85 Ill. App. 2d 251, 256, 229 N.E.2d 165, 168, *aff'd* (1968), 40 Ill. 2d 477, 240 N.E.2d 668, the court stated:

> "In sum, 'residence' is the principal dwelling place of a person— the place he considers 'home.' It denotes a permanency of some measure. Two elements are necessary to create a residence: (1) a physical presence in that place and (2) the intention of remaining there as a permanent home."

See also *Delk v. Board of Election Commissioners* (1983), 112 Ill. App. 3d 735, 738, 445 N.E.2d 1232, 1235.

The supreme court has stated:

> " 'A real and not an imaginary abode, occupied as his home or dwelling, is essential to satisfy the legal requirements as to the residence of a voter. One does not lose a residence by temporary removal with the intention to return, or even with a conditional intention of acquiring a new residence ***.' " *Clark v. Quick* (1941), 377 Ill. 424, 427, 36 N.E.2d 563, 565, quoting *Park v. Hood* (1940), 374 Ill. 36, 43, 27 N.E.2d 838, 842.

The supreme court has also observed:

> "We have frequently held, that when a party leaves his residence, or acquires a new one, it is the intention with which he does so that is to control. Hence the shortest absence, if at the time intended as a permanent abandonment, is sufficient, although the party may soon afterwards change his intention; while, on the other hand, an absence for months, or even years, if all the while intended as a mere temporary absence for some temporary purpose, to be followed by a resumption of the former residence, will not be an abandonment." *Kreitz v. Behrensmeyer* (1888), 125 Ill. 141, 195, 17 N.E. 232, 253.

Although the declarations of a party's intent are admissible as evidence, they are not necessarily conclusive and may be disproved by his acts. (*Kreitz*, 125 Ill. at 195, 17 N.E. at 253; *Delk*, 112 Ill. App. 3d at 738, 445 N.E.2d at 1235.) Evidence of other probable residences or the residence of a spouse and family is always relevant. See *Delk*, 122 Ill. App. 3d at 738-39, 445 N.E.2d at 1235-36; *Miller v. Police Board* (1976), 38 Ill. App. 3d 894, 898, 349 N.E.2d 544, 548.

■ The issue before us concerns the legitimacy of Curran's residence as of May 8, 1993, when he acquired the leasehold in the Concord apartment. We emphasize this because petitioners do not contend that Curran's intentions changed after that date. Rather, they argue that subsequent events demonstrate that Curran never intended to abandon his Woodland residence. We also point out that the entire 18-month period during which Curran must maintain residency within the 100th district to qualify for election to the General Assembly has not yet expired. Future events, or their absence, may yet bear on the question of whether Curran is constitutionally qualified to hold the office he seeks should he be elected at the general election in November.

In reviewing the record made before the Electoral Board, we conclude that there was sufficient evidence upon which the Electoral Board could conclude Curran satisfied the residency requirements as of May 8, 1993. He concededly established a physical presence within the 100th district by renting the Concord apartment and moving in. Curran also testified that he intended to abandon the Woodland property and become a resident of the 100th district for the purpose of running for reelection. There is also undisputed evidence that the Currans made an offer to purchase a home within the 100th House and Butler School districts in February 1993 which would have dispelled any question about Curran's residency had the sale been consummated.

We reject petitioners' contention that because the Concord apartment was admittedly a "temporary" residence, Curran cannot, as a matter of law, qualify for residence in the 100th district. A person can acquire a domicile if he is personally present in a place and elects that as his home even if he never intends to remain in that physical structure on a permanent basis. Counsel for petitioners conceded as much at oral argument when he agreed that Curran would have established residency under the hypothetical situation in which the Currans had purchased land and were building a home within the boundaries of the district which was not yet completed when Curran rented an apartment to meet the constitutional deadline.

The constitution requires only that a candidate be a resident of the new district. Residence requires physical presence in the district with the intent that such presence be permanent. It does not, however, require that "permanence" attach to any particular physical structure. The fact that Curran admitted that both the Concord and Jackson properties were temporary addresses is entirely consistent with the desire to purchase a home which will accommodate the children's educational requirements because neither of these properties is within the Butler school district. While the evidence concerning the level of involvement with his family at the Woodland residence presents questions concerning his motivation, we cannot say, as a matter of law, that this evidence demonstrated he did not have the intent to abandon the Woodland property as his permanent abode when he acquired the Concord apartment.

At most, the evidence upon which the petitioners rely, as well as Curran's explanations, presented a question of fact for the Electoral Board to resolve. The findings of an administrative agency are deemed to be *prima facie* true and there need only be some competent evidence in the record sufficient to support the agency's findings. (*Greene*, 112 Ill. App. 3d at 871, 445 N.E.2d at 1343.) These findings and permissible inferences cannot be discarded merely because the court might have drawn other inferences from the facts. *Gould v. Industrial Comm'n* (1968), 40 Ill. 2d 548, 552, 240 N.E.2d 661, 663.

■ Finally, we address the jurisdictional issue raised by the cross-appeal. Curran contends that the Electoral Board and the circuit court were without jurisdiction to adjudicate the residency issue. Curran's theory is that article IV, section 6(d), of the constitution (Ill. Const. 1970, art. IV, § 6(d)) reserves unto the General Assembly the sole and exclusive right to judge the qualifications of its members precluding the inquiry and review conducted by the Electoral Board and the circuit court respectively in this case. This argument is clearly without merit.

The constitutional provision simply does not apply in this case. Curran is a *candidate* for office, not a *member* whose qualifications the House of Representatives can judge. It is only if he is elected in the November general election and presents himself for membership in the General Assembly that the constitutional provision upon which Curran relies may be invoked if an appropriate challenge to his election is raised. The Electoral Board's function is to determine whether a challenged nominating petition complies with the provisions of the Election Code. (*Phelan v. County Officers Electoral Board* (1992), 240 Ill. App. 3d 368, 372-73, 608 N.E.2d 215, 217.) This is an independent inquiry from that which the General Assembly may undertake.

For the foregoing reasons, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

KNECHT, J., concurs.

JUSTICE LUND, dissenting:
"Residence," as referred to by the framers of the 1970 Constitution, appears to be equivalent to the residence requirement for voters. The opinions of our supreme court dealing with the definition of "residence" have basically related to voters. (*Kreitz*, 125 Ill. at 195, 17 N.E. at 253; *Park*, 374 Ill. at 43, 27 N.E.2d at 842; *Coffey v. Board of Election Commissioners* (1940), 375 Ill. 385, 387-88, 31 N.E.2d 588, 589; *Clark*, 377 Ill. at 426-27, 36 N.E.2d at 565; *Messman v. Newman Township High School District No. 150* (1942), 379 Ill. 32, 38-39, 39 N.E.2d 332, 336; *Tuthill v. Rendelman* (1944), 387 Ill. 321, 341, 56 N.E.2d 375, 386; *Stein*, 40 Ill. 2d at 479-80, 240 N.E.2d at 669.) There is no reason to believe a different interpretation was intended by the convention. Intent is a factor to consider. (*Stein*, 40 Ill. 2d at 479-80, 240 N.E.2d at 669.) However, the intent to be a resident is of importance, not the intent to be eligible for candidacy. Residency is required by the constitution. Ill. Const. 1970, art. IV, § 2(c).

Here, it is apparent that the rented apartment was intended to be temporary, while a more appropriate home could be found for the family. The family home, outside the 100th district, was still owned and occupied by the family. Curran continued his marital relationship and his family relationship. Little changed in the marital home, except that Curran spent some time in the temporary apartment (apparently only to qualify as a candidate for the 100th district). Would not this evidence result in a decision that Curran was a resident of, and could register and vote from, the family residence? Could not the same evidence sustain Curran's right to run for election in the 99th district? I suggest the answer to each of these questions is yes.

"A real and not an imaginary abode occupied as his home or dwelling, we have held, is essential to satisfy the residential qualifications prescribed by law." (*Coffey*, 375 Ill. at 387, 31 N.E.2d at 589.) "[A] permanent abode is necessary to constitute a residence within the contemplation of the pertinent constitutional and statutory provisions." (*Coffey*, 375 Ill. at 387, 31 N.E.2d at 589, citing *Pope v. Board of Election Commissioners* (1938), 370 Ill. 196, 199, 18 N.E.2d 214, 215.) A temporary removal from a residence does not

result in a change of location for voter registration. See *Coffey*, 375 Ill. at 387, 31 N.E.2d at 589; *Messman*, 379 Ill. at 39, 39 N.E.2d at 336; *Clark*, 377 Ill. at 427, 36 N.E.2d at 565.

The majority opinion is an incorrect interpretation of the constitutional provision. We should not interpret the restrictive provision of the constitution to mean that a person from one district can declare an intent to run for a representative or senate seat in another and be allowed on the ballot because of the part-time use of a rented apartment, while maintaining a family in another residence outside the district. I suggest the result of the majority's incorrect interpretation invites problems in the future.