CHERYL A. WALSH, Petitioner-Appellant, v. COUNTY OFFICERS ELECTORAL BOARD OF COOK COUNTY *et al.*, Respondents-Appellees.

First District (4th Division)    No. 1—94—1926

Opinion filed November 3, 1994.

Charles J. Gramlich, of Gramlich Law Offices, P.C., of Springfield, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Karen Covy, Patricia M. Moser, and Sarah E. Wyton, Assistant State's Attorneys, of counsel), for appellees County Officers Electoral Board of Cook County, David D. Orr, Aurelia Pucinski, and Jack O'Malley.

Martin J. Healy, Jr., and Daniel B. Malone, both of Martin J. Healy, Jr. & Associates, of Chicago, for appellee David B. McAfee.

JUSTICE JOHNSON delivered the opinion of the court:

On December 20, 1993, petitioner, Cheryl A. Walsh, filed a petition with the County Officers Electoral Board contesting the qualifications of respondent David McAfee, a candidate for the office of State representative for the 47th Illinois House district, alleging that McAfee failed to establish and maintain a residence in the district before the expiration of the specified period. After a hearing on Walsh's petition, the County Officers Electoral Board (COEB) directed the State Board of Elections to certify McAfee as the Democratic candidate for the 47th representative district as its representative to the Illinois General Assembly.

Walsh immediately sought judicial review of the COEB's decision in the circuit court of Cook County. The trial court found that although the factual findings of the COEB were not against the manifest weight of the evidence, the facts did not establish an abandonment of respondent McAfee's prior address nor did they support the conclusion that he moved to the 47th district with the intent to establish his permanent residence. Accordingly, the trial court reversed the COEB's order and sustained Walsh's objections to McAfee's qualifications. The State Board of Elections was then directed not to certify McAfee's candidacy for the general election. Shortly thereafter, McAfee filed a motion for reconsideration.

In the interim, a similar residency case, *Dillavou v. County Officers Electoral Board* (1994), 260 Ill. App. 3d 127, was decided by this court and McAfee filed another motion for reconsideration relying upon *Dillavou*. In light of *Dillavou*, the trial court vacated its prior order and affirmed the decision of the COEB. The trial court also ordered McAfee certified as the Democratic candidate for State representative from the 47th district. Subsequently, Walsh filed an appeal and sought an expedited hearing. On August 30, 1994, this court heard oral arguments in this case, issued a written order affirming the judgment of the trial court, and stated that a written opinion would be forthcoming. We now issue such opinion.

On appeal, Walsh contends (1) McAfee's actions did not establish either his presence in the 47th district or his intent to reside there; (2) McAfee did not "abandon" his residence in the 48th district and establish residency within the 47th district; and (3) McAfee bears the burden of demonstrating his change of residency.

We affirm.

The following facts are relevant. In 1990, McAfee was elected State representative to the General Assembly from the 47th district. He was reelected to that office in 1992 and again seeks to be elected on November 8, 1994. Between 1990 and 1992, the boundaries of the 47th representative district were reapportioned, rendering McAfee's

residence, located at 6493 Apache Drive in Indian Head Park, Illinois (Apache), in the 48th rather than the 47th district. Although McAfee no longer resided in the 47th district, for purposes of the 1992 election, section 2(c) of article IV of the 1970 Illinois Constitution (Ill. Const. 1970, art. IV, § 2(c)) permitted him to run as a candidate from that district despite his failure to reside within its boundaries. McAfee was reelected. Nevertheless, in order to obtain proper certification to run again in 1994, McAfee was required to establish a permanent residence in the 47th district on or before May 8, 1993, 18 months prior to the general election. Ill. Const. 1970, art. IV, § 2(c).

McAfee, his wife, Kathleen, and their two children began living at Apache in 1979. On May 2, 1993, to accommodate the redistricting scheme, McAfee moved into an apartment located at 810 Arlington Street, La Grange, Illinois (Arlington), in the 47th district. He testified that he moved to Arlington with the intent to establish his permanent residence. His wife and children continued to reside at Apache in the 48th district. McAfee indicated that he only stayed at Apache on occasions when his wife was out of town and it was necessary for someone to stay with his son.

On May 3, 1993, he moved his personal belongings into the Arlington apartment. The next day, he changed his voter registration to Arlington and obtained a new driver's license reflecting the new Arlington address. Three days later, he obtained a La Grange resident vehicle sticker. Early the next month, a telephone was installed at Arlington. He also notified the payroll division of the General Assembly that his correct address was Arlington.

McAfee's Arlington neighbor, Richard Pedkowski, testified that he sees McAfee a few times a week, usually in the morning or late at night and often notices McAfee's car parked near Arlington. Joanne Killian, McAfee's landlady, stated that McAfee receives mail at the apartment and uses his parking space. She also testified that McAfee spends nights at the apartment when he is not in Springfield.

After evaluating all evidence presented, the COEB found as a matter of fact that McAfee established a physical presence with the intent to remain at Arlington and overruled Walsh's objections. The trial court affirmed the COEB's decision and Walsh appeals.

Initially, Walsh asserts that McAfee's actions were not sufficient to qualify him as a resident of the 47th district. She argues that McAfee's move to Arlington was not *bona fide* and unconditional, citing several facts including the following: McAfee's moving into a one-room efficiency apartment on a month-to-month basis; his visiting his family at Apache; his failure to attempt to sell the Apache residence; his receipt of mail at Apache; his never filing a change of

address form with the Post Office; and his failure to move his family to Arlington.

■ A permanent abode is necessary to constitute a residence within the meaning of the Election Code. (Ill. Rev. Stat. 1991, ch. 46, par. 3—2.) The Illinois Constitution mandates that a candidate for the General Assembly must reside in the district he seeks to represent for two years prior to the election (Ill. Const. 1970, art. IV, § 2(c)); however, the Constitution does recognize an exception when redistricting is involved. Section 2(c) additionally provides: "[A] candidate for the General Assembly may be elected from any district which contains a part of the district in which he resided at the time of the redistricting and reelected if a resident of the new district he represents for 18 months prior to the reelection." Ill. Const. 1970, art. IV, § 2(c).

■ "Two elements are necessary to create a residence: physical presence and intent to remain there as a permanent home." (*Delk v. Board of Election Commissioners* (1983), 112 Ill. App. 3d 735, 738.) Concerning the factual determination of intent, this court has held that the surrounding circumstances shall be accorded more weight than simple declarations of intent. *Miller v. Police Board* (1976), 38 Ill. App. 3d 894.

The aforementioned facts cited by Walsh considered either individually or collectively, and considered in view of McAfee's affirmative actions in furtherance of changing his residence, fail to support her position. McAfee's moving into a one-room efficiency apartment on a month-to-month basis does not negate intent to reside there, particularly considering his testimony that he and his wife were "physically separated." Regarding McAfee's visiting his family at Apache, he stated: "I have stayed with my son when my wife has been out of town for a period of about five or six days. *** There was also one other occasion for maybe a day or two when she went to visit my daughter on Parents Weekend [at her college]. On no other instances have I spent time there." This conduct constitutes a sparse presence at best and does not demonstrate McAfee's lack of intent to reside at Arlington or his failure to be present there on a continual basis.

McAfee's failure to attempt to sell Apache and his failure to move his family to Arlington also do not support the assertion that he does not reside at Arlington. Apache is owned in joint tenancy by McAfee and his wife. Apache is the permanent residence of his wife and son. It is also the permanent residence of his daughter who is away at college. The fact that he did not try to sell the house, therefore, is evident. His family continued to reside there and, while

evidence of the residence of a party's spouse and children is relevant, it by no means solely supports a conclusive finding of permanent residence. We also do not believe that his family's presence at Apache, taken in conjunction with the other facts submitted by Walsh, supports her conclusion that McAfee did not permanently reside at Arlington.

Regarding the filing of a change of address form with the Post Office, both McAfee and his landlady testified that McAfee receives mail at Arlington. McAfee stated that while both his name and his wife's name may appear on various utility bills for Apache, his wife was responsible for the family finances and paid all the bills. This type of arrangement is certainly not uncommon for married couples, and we do not believe the failure to remove McAfee's name from all or any of the jointly held accounts adversely reflects upon the authenticity of his move to Arlington.

After reviewing the evidence presented, the COEB found as follows:

> "[I]t was established that the candidate had a month-to-month leasehold on an apartment at the Arlington address and had moved in certain personal possessions before May 8, 1993. He had changed to the Arlington address the address on his driver's license, and obtained a city vehicle sticker from La Grange; he changed his voter's registration and voted in a Nonpartisan Election held in November, 1993 from the Arlington address, and that he established telephone service at the Arlington address on or about June 4, 1993. In addition the candidate's land[lady], Joanne Killian, and neighbor, Richard Pend[k]owski, corroborated [the] candidate's testimony regarding his presence at the Arlington address."

■ Review of an Electoral Board's decision concerning factual questions does not constitute a *de novo* review of the evidence; review is, rather, controlled by the manifest weight of the evidence standard. (*Benjamin v. Board of Election Commissioners* (1984), 122 Ill. App. 3d 693, 696.) Accordingly, decisions of an Electoral Board will not be reversed unless they are against the manifest weight of the evidence. (*Serwinski v. Board of Election Commissioners* (1987), 156 Ill. App. 3d 257, 261.) We find that the COEB was presented with sufficient evidence to conclude that McAfee permanently resided at Arlington on or before May 8, 1993, and that Walsh has failed to present evidence warranting a contrary finding.

Walsh relatedly opines that McAfee neither "abandoned" Apache nor did he establish residency within the 47th district. This issue is substantively identical to the previous issue and Walsh acknowledges

as much in her brief. We therefore find it unnecessary to launch a second evaluation of the same facts and circumstances.

It is instructive to discuss, however, a factually similar case recently decided by this court which provides significant guidance in this instance. *Dillavou v. County Officers Electoral Board* (1994), 260 Ill. App. 3d 127, also involved a candidate for the General Assembly who was a victim of redistricting. Michael Curran sought to run for State representative from the 100th district and petitioners, residents of that district, filed objections to his nominating papers asserting that he was not a *bona fide* resident of the district.

Curran was the incumbent representative from the 100th district. He was initially elected as representative from the 99th district in 1982 and was reelected as representative from that district through 1990. In 1991, however, his district was reapportioned rendering his residence outside of the district from which he was elected. For purposes of the 1992 election, section 2(c) of the Illinois Constitution (Ill. Const. 1970, art. IV, § 2(c)), which made allowances for redistricting, permitted him to run again for representative from the 100th district (encompassing the majority of his former district) although he resided in the 99th district. He was nevertheless required to establish a permanent residence within the 100th district at least 18 months prior to the 1994 general election if he intended to seek reelection as that district's representative.

In December 1993, Curran filed nominating papers for the office of State representative from the 100th district. Pursuant to residency requirement, Curran rented a townhouse from a friend in the 100th district and moved in prior to the 18-month deadline of May 8, 1994. He did not intend to remain at this residence and his wife and children never moved or intended to move into the house with him. In September 1993, Curran then purchased a house near the State Capitol, also located within the 100th district. His wife and children likewise never moved or intended to move into that house. Although he moved into the 100th district, Curran estimated that he still spent 40% to 50% of his time with his wife and children at their home in the 99th district. At the hearing before the County Officers Electoral Board of Sangamon County, Curran characterized his occupancy of the house he purchased as "temporary."

The electoral board concluded that Curran was a resident of the 100th district and denied the petitioners' objections. Petitioners subsequently appealed to the circuit court, which found that the electoral board's decision was not against the manifest weight of the evidence. Petitioners later filed an expedited appeal with this court, which ultimately affirmed the judgment of the trial court and

directed the board of elections to certify Curran as the Democratic candidate for representative from the 100th district.

While similar to the case we are called upon to decide here, *Dillavou* is not as factually strong in terms of the establishment of permanent residency. In *Dillavou*, the respondent admitted that his residence in the 100th district was "temporary," even though he purchased a house there. In this case, contrarily, McAfee testified that he moved to Arlington with the intent to establish his permanent residence.

McAfee's testimony, in addition to that of his landlady and his neighbor, evinces that he was physically present at Arlington. On May 1, 1993, McAfee entered into a lease for the Arlington apartment and moved his clothes and personal effects into the apartment the next day. He testified that he registered to vote at Arlington on May 4, 1993. The same day, he obtained a driver's license reflecting the Arlington address. His landlady and neighbor have observed him coming and going from the apartment. He is physically separated from his wife and has not resided with her at Apache since May 2, 1993. In fact, his wife specifically told a process server, who was looking for McAfee at Apache, that he no longer resided there.

Regarding the issue of presence, the COEB found as a matter of fact that McAfee established physical presence at Arlington. It further found that, although McAfee moved to Arlington with the express intent of being eligible to run for representative from the 47th district, this motivation does not negate a genuine change of residence. In our judgment, application of the manifest weight of the evidence standard to the trial court's findings with respect to this issue does not warrant a reversal of the COEB's decision.

■ Finally, Walsh argues that the COEB erroneously found that she had the burden of proof regarding change of residency. It has been established that a point raised but not argued or supported by citation to *relevant* authority fails to meet the requisites of Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)) and, therefore, is deemed waived. (*Brown v. Tenney* (1988), 125 Ill. 2d 348, 362.) Furthermore, "[a] reviewing court is entitled to have the issues *** clearly defined with pertinent authority cited and a cohesive legal argument presented." (*Thrall Car Manufacturing Co. v. Lindquist* (1986), 145 Ill. App. 3d 712, 719.) Consequently, any issue not clearly defined and sufficiently presented is similarly deemed waived. (*Vincent v. Doebert* (1989), 183 Ill. App. 3d 1081, 1087.) We find Walsh's presentation of this issue, only one page in length, cursory and lacking in legal foundation and therefore consider it waived.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HOFFMAN, P.J., and CAHILL, J., concur.