# Illinois Official Reports

## Appellate Court

---

### *Mondragon v. Reyes*, 2015 IL App (1st) 150310

---

| | |
|---|---|
| Appellate Court Caption | ADOLFO MONDRAGON, Petitioner-Appellant, v. RAUL O. REYES and THE BOARD OF ELECTION COMMISSIONERS OF THE CITY OF CHICAGO and its Members LANGDON D. NEAL, RICHARD A. COWEN, and MARISEL A. HERNANDEZ, Respondents-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-15-0310 |
| Filed | March 10, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2015-COEL-15; the Hon. David A. Skryd, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Law Offices of Steven W. Becker, LLC, of Chicago (Steven W. Becker and Adolfo Mondragon, of counsel), for appellant.<br><br>Welch Law, Ltd., of Palos Heights (Matthew M. Welch and Sara M. Gallagher, of counsel), and James M. Scanlon & Associates, P.C., of Chicago (James M. Scanlon, of counsel), for appellees. |

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Presiding Justice Simon and Justice Liu concurred in the judgment and opinion.

## OPINION

¶ 1     This case involves the interpretation of provisions in the Illinois Municipal Code (Code) (65 ILCS 20/21-14(a) (West 2012)) concerning residency requirements following redistricting. Although Raul Reyes had lived in the 14th ward within the year preceding the 2015 election, he sought election as alderman for the 15th ward. Adolfo Mondragon objected maintaining that Reyes did not meet the Code's residency requirement. The Board of Election Commissioners of the City of Chicago (Board) dismissed Mondragon's objection, finding that because of a redistricting in 2012, residents of the 14th ward met the residency requirement to run for alderman in the 12th, 14th, 15th, 16th, 22nd, and 23rd wards. Mondragon appeals. We agree with the Board's interpretation of the Code, and therefore we affirm.

¶ 2     BACKGROUND

¶ 3     Aldermen of the City of Chicago redrew the boundaries of the City's wards in 2012. Parts of the old 14th ward became parts of the new 12th, 14th, 15th, 16th, 22nd, and 23rd wards. Chicago held its first aldermanic election since the 2012 redistricting in February 2015.

¶ 4     Raul Reyes lived on South Whipple Street in Chicago. Reyes's residence was in the 14th ward both before and after the 2012 redistricting. Reyes moved to an address in the new 15th ward during 2014. In November 2014, Reyes filed nomination papers, seeking election as alderman for the new 15th ward. Mondragon objected to Reyes's nomination, arguing that Reyes could not represent the 15th ward because he had not lived in the 15th ward for a year. See 65 ILCS 20/21-14(a) (West 2012). Reyes moved to dismiss the objection. Reyes contended that the Code permitted him to serve as alderman for the 15th ward because part of the old 14th ward had become part of the new 15th ward.

¶ 5     The Board agreed with Reyes and dismissed Mondragon's objection, thereby permitting Reyes's name to remain on the ballot for election as alderman for the 15th ward. The circuit court affirmed the Board's decision. Mondragon now appeals.

¶ 6     ANALYSIS

¶ 7     Mondragon's appeal presents the court with a legal issue, the proper interpretation of the Code. Therefore, we review the Board's ruling *de novo*. *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 603 (2008).

¶ 8     The portion of the Code at issue provides: "In the election following redistricting, a candidate for alderman may be elected from any ward containing a part of the ward in which he or she resided for at least one year next preceding the election that follows the redistricting, and, if elected, that person may be reelected from the new ward he or she represents if he or she resides in that ward for at least one year next preceding the reelection." 65 ILCS 20/21-14(a) (West 2012).

¶ 9        The dispute centers on the phrase "in which he or she resided for at least one year next preceding the election that follows the redistricting." Reyes contends that the phrase modifies the noun "ward," and the entire phrase forms the object of the preposition "of." Mondragon argues that the phrase modifies the noun phrase "part of the ward." Under Mondragon's interpretation, after redistricting, a candidate may run for office only in the new ward that includes the part of the old ward where the candidate resided. Under Reyes's interpretation, after redistricting, candidates may run for office in any of the wards that include any part of the old ward.

¶ 10       Mondragon's interpretation runs into the difficulty with language in the Code that expressly permits a candidate to seek election from "any ward" that contains part of the old ward. If the legislature intended to limit the candidate to running only in the new ward that includes his residence, the legislature would have said that the candidate "may be elected from the ward containing the part of the ward in which he or she resided for at least one year next preceding the election that follows the redistricting," because a single residence must lie in only one of the new wards.

¶ 11       To address this difficulty with the Code's language, Mondragon substantially rewrites the Code. He argues that we must read "part of the ward" to mean "the precinct" where the candidate lived. Thus, Mondragon argues that the Code permits a candidate to run for office from a ward other than the one in which he resides only if part of the precinct in which he resided becomes part of a different ward. Because no part of the precinct in which Reyes resided became part of the 15th ward, Mondragon claims that Reyes cannot represent the 15th ward.

¶ 12       The legislature did not refer to precincts in this portion of the Code. We find that the language of the Code does not support Mondragon's strained interpretation. See *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005).

¶ 13       The legislative history supports Reyes's interpretation of the Code. In response to a question about the effect of redistricting on candidates for alderman, Representative Currie explained that the Code "will work the same way it works for us. *** My house may not be in the district that I had represented but if I had lived in a district that included portions of the new territory I'd be allowed to run ***." 93d Ill. Gen. Assem., House Proceedings, July 24, 2004, at 24 (statements of Representative Currie).

¶ 14       Currie referred to the "way it works for us." Article IV, section 2(c), of the Illinois Constitution of 1970 governs the candidacy of state representatives following redistricting. Section 2(c) provides, "In the general election following a redistricting, a candidate for the General Assembly may be elected from any district which contains a part of the district in which he resided at the time of the redistricting and reelected if a resident of the new district he represents for 18 months prior to reelection." Ill. Const. 1970, art. IV, § 2(c). We have found no case in which a party argued for an interpretation of article IV in the way Mondragon interprets the Code.

¶ 15       Instead, we find two cases in which all the parties construed article IV in a manner consistent with Reyes's construction of the Code. In *Dillavou v. County Officers Electoral Board*, 260 Ill. App. 3d 127, 129 (1994), the court said:

           "Curran is the incumbent Democratic State representative from the 100th House District. He was originally elected as a representative from the 99th House District in 1982 and stood for reelection in that district through the 1990 election. In 1991, the

legislative districts were reapportioned pursuant to constitutional mandate. [Citation.] As a result of boundary changes, Curran's Springfield home at 1040 Woodland (Woodland) is no longer in the territory encompassing the district from which he was elected. Because the redistricting process was not completed until early 1992, however, Curran was able to run for election in the 100th district (which contains a majority of his former district) despite the fact that he now lived in the newly constituted 99th district. Curran knew, however, that to qualify for reelection in the 100th district in 1994 he had to establish residence in the 100th district at least 18 months prior to the 1994 general election."

Thus, in 1992, Curran could represent the 100th district, a district in which he did not reside, because, in the 1992 redistricting, a portion of the old 100th district (the district in which Curran resided prior to redistricting) became part of the new 100th district.

¶ 16 Similarly, in *Walsh v. County Officers Electoral Board*, 267 Ill. App. 3d 972, 974-75 (1994), the court said:

"In 1990, McAfee was elected State representative to the General Assembly from the 47th district. He was reelected to that office in 1992 and again seeks to be elected on November 8, 1994. Between 1990 and 1992, the boundaries of the 47th representative district were reapportioned, rendering McAfee's residence, located at 6493 Apache Drive in Indian Head Park, Illinois (Apache), in the 48th rather than the 47th district. Although McAfee no longer resided in the 47th district, for purposes of the 1992 election, section 2(c) of article IV of the 1970 Illinois Constitution (Ill. Const. 1970, art. IV, § 2(c)) permitted him to run as a candidate from that district despite his failure to reside within its boundaries. McAfee was reelected. Nevertheless, in order to obtain proper certification to run again in 1994, McAfee was required to establish a permanent residence in the 47th district on or before May 8, 1993, 18 months prior to the general election."

¶ 17 In accord with the interpretation of article IV in *Dillavou* and *Walsh*, we adopt Reyes's construction of the Code. In the first election following the redistricting in 2012, a year-long resident of any part of the 14th ward would meet the residency requirement for representing any of the wards that included any part of the old 14th ward. Thus, a resident of the 14th ward could run for alderman from the 12th, 14th, 15th, 16th, 22nd, or 23rd ward. *Dillavou*, 260 Ill. App. 3d at 129; *Walsh*, 267 Ill. App. 3d at 974-75; see also *Norris v. Gould*, 2003-1876, p. 2 (La. Ct. App. 9/10/03); 854 So. 2d 448.

¶ 18 Finally, Mondragon argues that the Code, as Reyes interprets it, violates the equal protection clause because most office seekers can run for alderman only in the wards in which they live, but residents of the redistricted 14th ward can choose any of six different wards in which to run. Mondragon cites no case finding any similar redistricting law unconstitutional, and he does not explain how the Code denies him equal protection. Mondragon lives in the 12th ward, not the 15th, so Reyes's candidacy for the office of alderman from the 15th ward has no adverse effect on Mondragon's right to representation in city council. Because Mondragon has not shown that he "ha[s] sustained or [is] in immediate danger of sustaining a direct injury from enforcement of the challenged statute" (*Kluk v. Lang*, 125 Ill. 2d 306, 315 (1988)), we find that Mondragon has not shown that he has standing to challenge the Code or Reyes's candidacy on equal protection grounds.

CONCLUSION

At the first election after the city council redistricts the City into wards with new boundaries, year-long residents of a redistricted ward meet the residency requirement for seeking office in any of the wards that include any part of the redistricted ward. Therefore, Reyes's residence in the 14th ward sufficed to make him eligible to run in 2015 for alderman of the 15th ward. Finally, Mondragon has not shown that he has standing to raise an equal protection challenge to the Code. Accordingly, we affirm the dismissal of Mondragon's objection to Reyes's candidacy.

Affirmed.