(No. 16329.—Reversed and remanded.)
JAMES E. ANDERSON, Appellee, vs. FRANK PIFER,
Appellant.

*Opinion filed December 16, 1924—Rehearing denied Feb. 5, 1925.*

1. ELECTIONS—*what constitutes residence.* A permanent abode
is necessary to constitute a residence, as the two terms are synony-
mous, and one cannot have a residence in two places at same time.

2. SAME—*whether college student may vote in college town is a
question of fact—evidence.* Whether a college student is entitled
to vote because his permanent abode is at the place of the college
is one of fact and the student may testify as to his intention, but
such testimony is not conclusive.

3. SAME—*when college students cannot vote in college town.*
To entitle a student to vote in the town where his college is located
his residence must be *bona fide,* with no intention of returning to
the parental home; and where the student resides in the college
town only during the school year, returning to the home of his par-
ents during vacation, he is ordinarily not entitled to vote at the place
of the college, even though he pays his own way through school.

4. SAME—*when college students may vote in college town.* Col-
lege students entirely free from parental control, who regard the
college town as their home and who have no other home to return
to in case of sickness or other affliction, are legal voters in the
college town.

5. SAME—*defendant may show that ballots cast for contestant
were not legal.* The burden of proof is on the contestant to show
a majority of the legal votes cast at the election were for him,
and the production of the ballots cast for him raises the presump-
tion, *prima facie,* that they were legal votes, but the defendant
may rebut the presumption by showing the ballots were not cast
by legal voters.

APPEAL from the County Court of Woodford county;
the Hon. W. H. FOSTER, Judge, presiding.

BARNES, MAGOON & HORTON, for appellant.

ORMAN RIDGELY, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

At the election April 1, 1924, in Olio township, Woodford county, Frank Pifer was a candidate on the democratic ticket for supervisor and James E. Anderson was a candidate on the republican ticket for the same office. The result of the election as declared by the judges was that Pifer received 395 votes and Anderson 391 votes. A certificate of election was issued to Pifer and he qualified as supervisor. April 23 Anderson filed a petition in the county court to contest the election. The petition alleged, in substance, that numerous mistakes were made in counting the votes; that votes were counted for Pifer which should have been counted for Anderson; that there were several ballots with distinguishing marks counted for Pifer that should not have been counted for him, and that Pifer received a less number of legal votes and Anderson a greater number. The petition prayed for a re-count and that a certificate be issued to Anderson as having been elected supervisor. The answer denied Anderson received the greater number of legal votes; denied ballots were improperly counted for Pifer, and alleged that seventeen students attending Eureka College, in said township, had voted illegally at the election; that their ballots had been counted for Anderson, and said alleged illegal voters were named in the answer. At the hearing on the petition the ballots were re-counted and a judgment entered finding Anderson received 388 legal votes and Pifer 386 legal votes. Anderson was adjudged elected. This appeal is prosecuted from that judgment.

Appellant says that the decision of this case largely depends upon the correctness of the trial court's ruling in holding students to be legal voters and counting their ballots. The students whose right to vote is challenged were young men and women attending college in Eureka, which is in Olio township, Woodford county. Two of the students whose votes were challenged were held by the county court

to be illegal voters. Fifteen other students whose right to vote was challenged by appellant's answer were placed on the stand by him and interrogated as to their residence qualifications. We will not set out the substance of the testimony of all of them but have selected the testimony of three as typical of the fifteen students.

Cora B. Holloway testified she came from St. Louis to Eureka College in September, 1922. She had lived with her father and mother in St. Louis before coming to college. After coming to college she lived in a dormitory part of the time and a sorority house part of the time. She worked as secretary to the college president, for which she was paid. During the summer vacation of 1923 she lived at her parents' house at St. Louis and did stenographic work for pay. She had a room at her parents' home and called it "my home." She testified she regarded Eureka as her permanent home but after school was out she would probably go to Chicago. She had borrowed money from others than her parents to help pay for her schooling.

Dan Ogle testified he came from Keithsburg, Illinois, to the college in September, 1920. His father was dead but his mother lived and maintained a home in Keithsburg. She is a widow. He spent most of his Easter, Christmas and summer vacations at his mother's. Before coming to school he worked in a bank but lived at his mother's home. He testified he understood the town of Eureka was then his residence. If he were to become sick and unable to pursue his studies he would probably return to his mother's home. He received money from his father's estate, which was expended for his education. He also borrowed some money from his mother. She had not contributed anything to his education since he was twenty-one. He did not anticipate Eureka or Woodford county would be his permanent place of abode.

Elizabeth Utter testified she came from California in September, 1922, to the college. Her parents lived in Cali-

fornia and had for about thirty years. She went back there in the summer of 1923 and taught school two months. While at college she worked for her board. Her parents sent her money to help pay school expenses. She taught school in California three years before coming to Eureka.

We shall not further quote from the testimony of the witnesses who are claimed by appellant to have not been legal voters at the election. They were all students in Eureka College and testified they came there to complete their education. Most of them came from their parents' homes and returned to their homes during vacations, or at least some of their vacations. Most of them were paying their expenses, or a good part of them, by work in connection with their school attendance. They all testified they regarded Eureka as their home and had not voted anywhere else since coming to Eureka. Practically none of them expected to remain in Eureka after completing their education but expected to go elsewhere to find employment.

A permanent abode is necessary to constitute a residence. (Smith's Stat. 1923, chap. 46, sec. 66.) "Residence" and "permanent abode" are synonymous terms. (*Johnson* v. *People,* 94 Ill. 505.) Whether a college student is entitled to vote because his permanent abode is at the place of the college is one of fact. One cannot have a residence in two places at the same time. (*Dale* v. *Irwin,* 78 Ill. 170.) The mere presence of the student at the place of the college is not sufficient to entitle him to vote. His residence must be *bona fide* with no intention of returning to the parental home. College students entirely free from parental control, who regard the college town as their home and who have no other home to return to in case of sickness or other affliction, are legal voters. (*Dale* v. *Irwin, supra; Welsh* v. *Shumway,* 232 Ill. 54.) The question of residence is one largely of intention, and a voter is competent to testify as to his intention, but such testimony is not conclusive. The burden of proof is on the contestant

to show a majority of the legal votes cast at the election were for him, and the production of the ballots cast for him raises the presumption, *prima facie,* that they were legal votes, but the defendant may rebut the presumption by showing the ballots were not cast by legal voters. *Kreitz* v. *Behrensmeyer,* 125 Ill. 141; *Behrensmeyer* v. *Kreitz,* 135 id. 591.

We can add nothing to the rules laid down in the cases cited as to what constitutes one a resident and legal voter. Some students are by the legal test laid down voters at the place where they are attending college, but they are comparatively small in number compared to the whole student body. None of the fifteen students here challenged met the required test to render them legal voters. There are many thousand students attending universities and colleges in Illinois for the purpose of getting an education who are wholly or in part paying their way through the institutions. Most of them come from homes of parents to which they return at vacation time or to which they would return in case of sickness or affliction. To hold that all such students were legal voters at the place of the college would be doing violence to the legal requirements to constitute one a legal voter, and would have a very large influence in giving students the power to control local elections and local governmental questions where large educational institutions are located. The fact that a student does not expect to return home to live after he finishes school is not a very important one, for most persons attending universities and colleges expect, when they graduate, to enter some kind of business for themselves. We are satisfied the students objected to did not possess the qualifications of legal voters and the court erred in holding they were legal voters.

Some objection is made to the court's ruling in counting ballots objected to because of the way they were marked or because they had marks on them which might distin-

guish them. We are satisfied no substantial error was committed in this respect.

For the error in holding students were legal voters the judgment is reversed and the cause remanded.

*Reversed and remanded.*