(No. 24005.—

C. E. POPE, Appellant, *vs.* THE BOARD OF ELECTION COMMISSIONERS OF EAST ST. LOUIS, Appellee.

*Opinion filed December 20, 1938.*

Jones and Farthing, JJ., dissenting.

Pope & Driemeyer, for appellant.

R. W. Ropiequet, (Hugh Parker, William C. Radliff, John J. Driscoll, Cassius M. Doty, Robert L. Taylor, Colfax T. Martin, Jerry A. Harn, Eugene R. Johnson, B. J. Knight, W. Edgar Sampson, and Walter F. Dodd, of counsel,) for appellee.

Mr. Justice Wilson delivered the opinion of the court:

Conformably to the provisions of the City Election act, C. E. Pope appeared before the board of registry in precinct 17 of the city of East St. Louis, took the customary oath and asked to be registered as a voter. The request was refused and he was notified to appear before the board of election commissioners. Upon a hearing, the commissioners refused to register him. Thereafter, he filed a petition in the county court of St. Clair county by which he sought an order directing the commissioners to register him as a qualified voter. At the hearing on October 30, 1936,

Pope, alone, testified in support of his petition. From the order finding that he was not a resident of precinct 17 and denying his petition Pope prosecutes this appeal.

The appellant, Pope, is a practicing lawyer. From his testimony it appears that he moved to East St. Louis in 1897; that, until about fifteen years ago, he lived in a house on Summit avenue which he then owned; that, on account of his wife's ill-health, they left it during the winters, leaving their household furnishings, and returning each summer; that, because of repeated thefts during their absence, they stored the household goods and for upwards of fifteen years have temporarily resided in hotels in St. Louis, Missouri; that he rents by the month and has the right to vacate at any time. He testified that all the real and personal property owned by him and his wife is located in Illinois and, conversely, that neither of them has ever owned or kept any property in Missouri; that all his taxes are paid in East St. Louis; that his automobile licenses are issued in Illinois; that it has always been his intention to keep his domicile in this State, to return as soon as circumstances will permit, and that he has never intended to acquire a new domicile elsewhere. Appellant testified, further, that he never practiced law in Missouri, or attempted to obtain a license so to do, and that neither he nor his wife ever attempted to register or vote in Missouri. He added that after he closed his home on Summit avenue he continued to vote in East St. Louis, registering from his law office at 24 North Main street, in precinct 17, until December, 1935, when he moved his office to the First National Bank building, in the same precinct, the place from which he sought unsuccessfully to register. Upon interrogation by the court appellant admitted that he never actually resided at either office.

The single issue presented for decision is whether appellant, in 1936, was a resident of East St. Louis entitled to register. The determination of this question requires a

review of the qualifications for registration and voting prescribed by the constitution and by statute. Section 1 of article 7 of the constitution provides: "Every person having resided in this State one year, in the county ninety days, and in the election district thirty days next preceding any election therein, * * * who shall be a male citizen of the United States, above the age of twenty-one years, shall be entitled to vote at such election." There is an exception to the foregoing constitutional requirement in section 4 of article 7 which provides for the retention of their residence qualifications by persons absent on business of the United States or of this State, or in the military or naval service of the United States. We are not concerned, however, with this exception inasmuch as no such condition arises in the present case. Section 65 of the General Election law (Ill. Rev. Stat. 1937, chap. 46, par. 65, p. 1415) is identical with section 1 of article 7 of the constitution. Section 66 declares: "A permanent abode is necessary to constitute a residence within the meaning of the preceding section." Article 3A of the act relating to elections in such cities, villages and incorporated towns as adopt the act (Ill. Rev. Stat. 1937, chap. 46, p. 1437) prescribes regulations for registration of voters at such elections. East St. Louis is one of the cities which has adopted the City Election act. Article 3A, generally known as the Permanent Registration act, approved June 6, 1936, so far as pertinent, makes the same requirements for voting and registration as section 1 of article 7 of the constitution and sections 65 and 66 of the General Election law. In particular, section 8 requires a verified form to be filed by applicants for registration containing, among other items, the following information under the caption "Residence": "The name and number of the street, avenue or other location of the dwelling, and such additional clear and definite description as may be necessary to determine the exact location of the dwelling of the applicant."

The right to vote, it is established, is not a natural or inherent right, but exists only by positive law. (*Scown* v. *Czarnecki,* 264 Ill. 305.) Accordingly, registration laws have been sustained as reasonable limitations on the right of suffrage. (*People* v. *Hoffman,* 116 Ill. 587; *Byler* v. *Asher,* 47 id. 101.) Appellant was entitled to be registered only if he met the applicable residence requirements. To constitute a residence, within the meaning of the constitutional and statutory provisions, a permanent abode is necessary. (*Bullman* v. *Cooper,* 362 Ill. 469; *Anderson* v. *Pifer,* 315 id. 164; *Johnson* v. *People,* 94 id. 505.) In the case last cited, the contention that the terms "residence" and "permanent abode" bore different meanings was rejected and it is now definitely settled that these terms, as employed in the statute, are synonymous. An "abode" is universally defined as the place where a person dwells. (1 Bouv. Law Dict. (Rawle's 3rd revision) p. 88; *Anderson* v. *Pifer, supra; Dorsey* v. *Brigham,* 177 Ill. 250; *Dale* v. *Irwin,* 78 id. 170.) Webster's New International Dictionary defines "abode" as: "Place where one continues, abides or dwells; an abiding place; a dwelling; a habitation." The Permanent Registration law adopts the long established meaning of the words "permanent abode" and "residence" by using the word "dwelling" as synonymous with and descriptive of the word "residence."

A real and not an imaginary abode occupied as his home or dwelling is essential to satisfy the residence requirements of the law. *Carter* v. *Putnam,* 141 Ill. 133, holds that a person, by temporary removal of himself and family into another State with the intention to return, will not thereby lose his residence in this State provided he does no act from which the acquisition of a new residence may be inferred. In *Dorsey* v. *Brigham, supra,* this court held that a woman who had not actually lived for the time required by the statute in the precinct of Livingston county in which she voted could not be considered a resident of

such precinct although her husband had been a resident for the full ninety days; that, while she had her domicile in the county with her husband when he fixed it as the home of himself and family, she did not become a resident until she was actually physically within the county. No departure from this salutary rule has since been made. In *Welsh* v. *Shumway*, 232 Ill. 54, it was held that where a person leaves his residence and goes to another place, even if it be another State, with an intention to return to his former abode, or with only a conditional intention of acquiring a new residence, he does not lose his former residence so long as his intention remains conditional. It was likewise held, and, also, in *Stevenson* v. *Baker*, 347 Ill. 304, that where one abandons his home and takes up his residence in another county or State, he loses his privilege of voting in the precinct from which he moved.

Appellant places reliance, however, on *Widmayer* v. *Davis*, 231 Ill. 42, and *Carter* v. *Putnam, supra.* In the former case, William Layman was employed by the city of Jacksonville, in March before the mayoralty election of April, 1907, to work at Nichols Park, which was outside the city limits. Layman moved out to the park but, according to his testimony, did not move for the purpose of making Nichols Park his home, intending, on the contrary, to remain only until he finished his work when he expected to move back to Jacksonville. He specifically stated that he considered the ward from which he moved as his residence and home even though he owned no property in the ward. The opinion does not disclose whether Layman had a place of residence in the ward from which to vote, although the court did observe that his case was similar to one in which a man who had lived with his father, and was away temporarily, moved back to the father's house where he had left part of his property and voted therefrom. In the present case, appellant does not claim that he retained the precinct in which his former home on Summit avenue was

located as his residence. *Carter* v. *Putnam, supra,* was an election contest case which followed an election held on April 7, 1891, for the office of supervisor of the town of Ross, in Vermilion county. One of the questions considered was whether Howard Dwiggins was a legal voter of the town of Ross. Dwiggins was an unmarried man, and, prior to January 12, 1891, resided with his father in the town of Ross where he operated a store and transacted all his business. On the day named, the father, with his family, moved upon land in Grant township which he and Howard had leased. The son testified that after his father moved he usually took breakfast and supper and slept at his father's new home in Grant township. He did, however, keep some clothing at his store and ate and slept part of the time in Ross township. It also appears that he was town clerk of the town of Ross until the election, paid his taxes there and claimed it as his place of residence. Pointing out that the intention of a party has an important bearing on the question of residence, especially where the party is unmarried and has no family, this court held that Howard Dwiggins was a legal voter of Ross township. Manifestly, the factual situations in the *Widmayer case* and in *Carter* v. *Putnam* are far from parallel to the situation in the present case.

Appellant strenuously insists that his domicile is still in East St. Louis. Even if this be conceded, the concession would not aid him as it is elemental that domicile and residence are not synonymous. (1 Pope's Legal Definitions, p. 405.) Here, appellant had closed his home, stored his household furnishings, and for fifteen years had maintained living quarters in Missouri because of his predilection for living in St. Louis. While he has property, professional and business interests in East St. Louis, evidence is wanting that he has a place of residence in precinct 17 of the Illinois city which he ever occupied as an abode or to which he intends to return and to occupy as a dwelling. His own testimony

demonstrates conclusively that at the time of the entry of the order assailed and for an extended period of time prior thereto he did not have a voting residence in this State, within the meaning of the constitutional and statutory requirements. Under the City Election law mere proof that his domicile has been retained in East St. Louis would be insufficient to enable him to register and vote. It is necessary that he show a place of residence or permanent abode for the requisite statutory period in the precinct in which he seeks to register, which he has not abandoned but which he occupies as an abode, or to which he intends to return. Residence, for purposes of registration or voting, means more than a mere technical domicile and does not permit registration and voting from an office or business location where the applicant has never lodged. The meaning of the words "residence" and "permanent abode" cannot be tortured, under the guise of statutory construction, to include a business location not even purporting to be a definite place to which an intention to return might be legitimately inferred. Appellant's place of actual abode is in Missouri and not at his law office in Illinois. He is, hence, precluded from claiming residence for voting purposes in precinct 17 of East St. Louis. As was well said by Mr. Justice Scholfield in *Kreitz* v. *Behrensmeyer,* 125 Ill. 141; "It can, under our system, need no elucidation, that a man can not be entitled to vote, at any one time, in either of two places, as he shall elect; and it is * * * pertinent to keep in mind that it does not follow because a man must have a domicile somewhere, and that a domicile once gained remains until a new one is acquired, that a man must be entitled to vote somewhere, or that the right to vote at a particular poll, being once established, is presumed to continue until the right to vote elsewhere is shown."

The order of the county court is right and it is affirmed.

*Order affirmed.*

Jones and Farthing, JJ., dissenting.