THE PEOPLE *ex rel.* LISA MADIGAN, Attorney General State of Illinois, Plaintiff-Appellee, v. WILLIAM WADE BAUMGARTNER, Defendant-Appellant.

Fourth District   No. 4—04—0334

Argued January 11, 2005.—Opinion filed February 16, 2005.

McCULLOUGH, J., dissenting.

E.C. Eberspacher (argued), of Dove & Dove, of Shelbyville, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Linda D. Woloshin, Domenica A. Osterberger, and Jonathan J. Silbermann (argued), Assistant Attorneys General, of counsel), for appellee.

PRESIDING JUSTICE COOK delivered the opinion of the court:

In February 2004, a jury convicted defendant, William Wade Baumgartner, of one count of felony perjury for filing a statement of candidacy in which he allegedly falsely stated under oath that his address was in Moultrie County, Illinois (10 ILCS 5/29—10 (West 2002)). In March 2004, the trial court sentenced defendant to 12 months' conditional discharge and ordered him to pay a $500 fine and perform 75 hours' public service. Defendant appeals, arguing, *inter alia*, that the indictment charging him with perjury is void. We reverse.

Defendant was born in 1974 and was raised exclusively in Moultrie County, Illinois. In 1992, defendant graduated from high school in Moultrie County and enrolled at the University of Illinois at Urbana-Champaign (U of I) in the College of Agriculture. While at U of I, defendant returned to his home in Moultrie County regularly to work on the family farm with his father. Throughout his undergraduate years at U of I, defendant lived both on and off campus in Champaign-Urbana but continued to hold a Moultrie County driver's license and a Moultrie County voter's registration.

Defendant received his bachelor of science degree in animal science from U of I in 1996 and immediately began to study for a master's degree, also at U of I. Although he continued to live in Champaign-Urbana, he continued to hold his Moultrie County driver's license and voter's registration.

In 1997, defendant married his wife Jenny, and they moved into

an apartment in Mahomet together. When Jenny changed her name to Baumgartner, she changed her legal address, including her driver's license and voter's registration, to Champaign County. Defendant however, maintained his driver's license and voter's registration in Moultrie County. The couple later moved to a townhouse in Champaign, with Jenny once again changing her legal residence to that address and defendant keeping his address in Moultrie County. Defendant continued to spend a great deal of time in Moultrie County helping his father on the family farm.

In January 1999, defendant received his master of science degree from U of I. He immediately began work on a doctoral degree in animal genetics and later enrolled in the College of Law as well. Jenny had also begun studying for a master's degree with the intention to seek a doctorate as well. To save money on rent while they completed their studies, in June 1999 they purchased a house in Champaign. Defendant testified that they were not represented by an attorney and did not read all of the paperwork fully but the mortgage contained a clause requiring the borrower to use the real estate as a principal residence for one year after the purchase. The Champaign house also received a real-property-tax homestead exemption.

In August 1999, defendant and his cousin purchased an 86.7-acre Moultrie County farm from their grandmother Baumgartner, which had been used for the family farm. In October 2000, defendant acquired his grandfather's home in Sullivan in Moultrie County from his mother and grandmother. One of the preconditions of the conveyance was a requirement that defendant's school address be listed and not his father's address in Moultrie County because of a conflict between the mother and father, who were divorced. Also around this time, defendant and Jenny purchased two used automobiles, both of which were registered at the Champaign address.

Despite living in Champaign while he attended school, defendant returned to his home in Moultrie County frequently. He averaged two or three days a week spent at the house in Moultrie County, and as his academic schedule became more flexible, he would often spend three or four days in a row in Moultrie County. During these times at home, he would stay in his room at his father's house. Defendant returned to Moultrie County to vote in each general election from 1994 through 2002 and several others. He received a General Assembly Scholarship for the 2001-02 school year at U of I, which required that he be a resident of the district including Moultrie County but not Champaign County.

In the summer of 2001, defendant's father asked defendant to run for election to the county board of Moultrie County. Defendant's father

made several inquiries with a number of lawyers about defendant's eligibility to run for office even though he was a full-time student in Champaign. After receiving several informal opinions that defendant was eligible to run for office, defendant filed a statement of candidacy in the form provided by the statute (10 ILCS 5/7—10 (West 2002)), which provided in pertinent part:

> "I, W. Wade Baumgartner, being first duly sworn, say that I reside at R.R. #1 Box 133 Street, in the ___ of Windsor Zip Code 61957 in the County of Moultrie State of Illinois; that I am a qualified voter therein and am a qualified [p]rimary voter of the Republican Party; that I am a candidate for nomination to the office of County board in the ___ District, to be voted upon at the primary election to be held on March 19, 2002, and that I am legally qualified (including being the holder of any license that may be an eligibility requirement for the office I seek the nomination for) to hold such office and that I have filed (or I will file before the close of the petition filing period) a Statement of Economic Interests as required by the Illinois Governmental Ethics Act and I hereby request that my name be printed upon the official Republican Primary ballot for nomination for such office. /s W. Wade Baumgartner."

At the top of the form were boxes for "name," "address-zip code," "office," "district," and "party." In those boxes, defendant put substantially the same information as he did in the form of the statement, including the address at R.R. #1 in Windsor. Although Windsor is in Shelby County, the location of defendant's family farm at R.R. #1 is in rural Moultrie County. Defendant then campaigned for and was successfully elected to the county board for Moultrie County. No one challenged his qualifications or election either before or after his election. He was seated and held office until this prosecution was filed in August 2003.

On August 27, 2003, the office of the Illinois Attorney General filed an information against defendant, charging him with perjury pursuant to section 29—10 of the Election Code (10 ILCS 5/29—10 (West 2002)). On October 15, 2003, a bill of indictment was filed against defendant for the same charge, which provided in pertinent part

> "That W. Wade Baumgartner, on or about December 15, 2001, at and within said County of Moultrie, State of Illinois, committed the offense of PERJURY in that the said [d]efendant made a false statement in an affidavit required by the Illinois Election Code [(10 ILCS 5/7—10 (West 2002))] to-wit: a Statement of Candidacy: stating that his address was R.R. #1, Box 133, Windsor, Illinois, material to the issue in question which he did not believe to be

true, in violation of Act 5, Section 29—10, Chapter 10 of the Illinois Compiled Statutes."

Defendant made several objections to both the form and substance of the indictment, all of which were denied by the trial court. The court also rejected each of four nonpattern jury instructions submitted by defendant that attempted to explain the law of residency. The court held that "residence" was a common and clearly understood concept requiring no further explanation. Upon the preceding evidence, the jury convicted defendant of one count of perjury. The trial court sentenced him as stated. This appeal follows.

■ ■ Defendant is charged with violating section 29—10(a) of the Election Code (10 ILCS 5/29—10(a) (West 2002)), which provides in pertinent part as follows:

"Any person who makes a false statement, material to the issue or point in question, which he does not believe to be true, in any affidavit, certificate[,] or sworn oral declaration required by any provision of the [Election] Code shall be guilty of a Class 3 felony."

A person seeking the office of county board member must be a legal voter and have been a resident of the county for at least one year preceding the election. 55 ILCS 5/2—3015 (West 2002). The indictment charges that defendant made a false statement in a required affidavit by stating that his address was R.R. #1 Box 133, Windsor, in Moultrie County, Illinois. The State's position is that defendant was at the relevant time a resident of Champaign County and not Moultrie County. Defendant argues that the indictment against him is unconstitutionally vague because the terms "residence" and "address" are not sufficiently defined in the statute. Because the statute is fairly clear that "address" refers to the address of a candidate's "residence," we will treat the indictment as charging defendant with falsely representing his residence and only examine the term "residence" as it is used in the statute.

■ Although defendant makes the argument that the right to run for office is guaranteed by the first amendment and the statute is therefore invalid on its face, the case he cites in support is inapposite on this issue, so we will examine the constitutionality of the statute only as applied in this case. "To prevail in a vagueness challenge to a statute that does not implicate first amendment concerns, a party must demonstrate that the statute was vague as applied to the conduct for which the party is being prosecuted." *People v. Jihan*, 127 Ill. 2d 379, 385, 537 N.E.2d 751, 754 (1989). "That is, the party must show that the statute did not provide clear notice that the party's conduct was prohibited." *Jihan*, 127 Ill. 2d at 385, 537 N.E.2d at 754. "[T]here is a greater tolerance for statutory ambiguity in civil proceedings than

in criminal proceedings 'because the consequences of imprecision are qualitatively less severe.' " *Jihan*, 127 Ill. 2d at 387, 537 N.E.2d at 755, quoting *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99, 71 L. Ed. 2d 362, 372, 102 S. Ct. 1186, 1193 (1982).

■ For a statute to provide due process, it must " ' "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." ' " *People v. Einoder*, 209 Ill. 2d 443, 450, 808 N.E.2d 517, 522 (2004), quoting *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 442, 701 N.E.2d 1056, 1060 (1998), quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298-99 (1972). A statute violates due process on the basis of vagueness " ' "only if its terms are so ill-defined that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts." ' [Citations.]" *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 291, 786 N.E.2d 139, 157 (2003). The question in this case is whether the term "residence" is so commonly understood that it is proper to submit a person's statement of residence to a jury without any guidance in order to determine if he knowingly made a false statement.

Both parties have submitted differing usages of the term "residence." However, because eligibility to run for office is closely linked to the ability to vote within a particular jurisdiction, we will use the definition of "residence" as used within the Election Code for voter registration. See 55 ILCS 5/2—3015 (West 2002) (no person is eligible to hold the office of county board member unless he is a legal voter and has been a resident of the county for at least one year). Along with his statement of residence, defendant swore that he was a qualified voter in Moultrie County.

■ Two elements are necessary to create a "residence" for voter registration purposes: physical presence and an intent to remain there as a permanent resident. *Delk v. Board of Election Commissioners*, 112 Ill. App. 3d 735, 738, 445 N.E.2d 1232, 1235 (1983). Residence is lost upon abandonment; however, " 'an absence for months, or even years, if all the while intended as a mere temporary absence for some temporary purpose, to be followed by a resumption of the former residence, will not be an abandonment.' " *Stein v. County Board of School Trustees*, 40 Ill. 2d 477, 480, 240 N.E.2d 668, 669 (1968), quoting *Kreitz v. Behrensmeyer*, 125 Ill. 141, 195, 17 N.E. 232, 253 (1888). "[W]here a person leaves his residence and goes to another place, even if it be another [s]tate, with an intention to return to his former abode, or with only a conditional intention of acquiring a new

residence, he does not lose his former residence so long as his intention remains conditional." *Pope v. Board of Election Commissioners*, 370 Ill. 196, 201, 18 N.E.2d 214, 216 (1938). To change residence, "there must be, both in fact and intention, an abandonment of the former residence and a new domicile acquired by actual residence, coupled with the intention to make it a permanent home." *Welsh v. Shumway*, 232 Ill. 54, 77, 83 N.E. 549, 559 (1907).

Here, the State contends that despite defendant's claims, he was no longer a resident of Moultrie County, but his actions showed his intention to become a resident of Champaign County. It is uncontested that defendant owned a house in Champaign and had numerous contacts with Champaign County. However, it is clear from the record that the reason for defendant's presence in Champaign County was that he was a student at the U of I. The courts in Illinois have long held that a student in a college town is presumed not to have changed his residence to the town in which he is attending school. *Dale v. Irwin*, 78 Ill. 170, 182 (1875); *Welsh*, 232 Ill. at 88, 83 N.E. at 562; *Anderson v. Pifer*, 315 Ill. 164, 167, 146 N.E. 171, 173 (1924). Although a college student may become a resident of a college town if he is entirely free from parental control, has no intention of returning to the parental home upon the completion of his studies, regards the college town as his home, and has no other home to return to in case of sickness or other affliction, the burden is on the student to prove his residence in the college town. *Welsh*, 232 Ill. at 87-88, 83 N.E. at 562-63. All of these cases, *Dale*, *Welsh*, and *Anderson*, involve students attempting to establish residency in their college towns and the court deciding that they had not because their stay in the college town was only temporary. This is the first case we can find where a student continued to claim his parent's residence, his former home, as his residence for purposes of voting and running for office and the State challenged his ability to do so after the fact by way of a perjury charge.

One argument presented by the State is that defendant had started his own family and no longer had the intention of moving back into his childhood home, which has since been demonstrated by defendant's purchase of his own home in Moultrie County after he completed his studies. However, in the case of students, "[t]he fact that a student does not expect to return home to live after he finishes school is not a very important one, for most persons attending universities and colleges expect, when they graduate, to enter some kind of business for themselves." *Anderson*, 315 Ill. at 168, 146 N.E. at 173. "The controlling inquiry in deciding the residence of students, as with all others, is, where 'does the party actually make his home and claim for the time to exercise the rights of property or of citizenship incident to or

resulting from permanent residence?' " *Welsh,* 232 Ill. at 88-89, 83 N.E. at 563, quoting *Kreitz,* 125 Ill. at 196, 17 N.E. at 253. In other words, " 'it is necessary *** to determine whether while at college [a student] is at his home,—his residence,—or temporarily absent from it.' " *Welsh,* 232 Ill. at 87, 83 N.E. at 562, quoting McCrary, Elections § 101 (4th ed. ___ ).

Because a person may only have one residence for voting purposes, when a person has established a physical presence in two locations, he must make a decision about which location he intends to make his permanent residence. Implicit in the residency requirement of intention to make a place a person's permanent home is the ability of that person to choose whether he wishes to exercise the rights afforded to a permanent resident in his new location or if he wishes to continue his residence at the home he has temporarily left. As long as he does not seek to "exercise the rights of property or of citizenship incident to or resulting from permanent residence" at his new location but instead continues to exercise those rights, including the right to vote, at his original location, he remains a resident at the original location.

Here, defendant made his intentions clear: he intended to remain a resident of Moultrie County. Although he was in Champaign for an extended period of time, he always voted in Moultrie County and remained active in the community. Because defendant had established a physical presence in Moultrie County and intended to make Moultrie County his permanent home, he swore under oath that he was a resident of Moultrie County. If someone had challenged defendant's right to vote or run for office, his residency may ultimately be a question for the trier of fact. However, defendant was not simply charged with the failure to be a resident of Moultrie County; he was charged with perjury for allegedly lying in stating that he was a resident of Moultrie County.

"One must wilfully, corruptly, and falsely testify to a matter material to the issue or point in question to commit perjury." *People v. Drake,* 63 Ill. App. 3d 633, 635, 380 N.E.2d 522, 524 (1978). For an indictment for perjury to stand, the alleged false statement "must be a statement of fact and not a conclusion, opinion[,] or deduction drawn from given facts." *People v. White,* 59 Ill. 2d 416, 418, 322 N.E.2d 1, 3 (1974). This is true even if the underlying premise upon which that opinion or conclusion is based is later proved incorrect or erroneous. *Drake,* 63 Ill. App. 3d at 635, 380 N.E.2d at 524.

■ "What constitutes a residence in the abstract is a question of law, but whether it exists in a particular case is one of fact." *Welsh,* 232 Ill. at 76, 83 N.E. at 558. Determining a person's residence necessarily requires applying the law of residence to the facts surrounding a

person's living status. *Mina v. Board of Education for Homewood-Flossmoor*, 348 Ill. App. 3d 264, 273, 809 N.E.2d 168, 174 (2004). Here, facts linked defendant to two separate counties. Prior to moving to Champaign to attend U of I, defendant was unquestionably a resident of Moultrie County. There is also no question that, while defendant was a student, defendant's stay in Champaign was somewhat different from the average student's. Defendant was in Champaign for over 10 years, got married, and purchased a home. But at all times that he was in Champaign, defendant was enrolled as a student at the U of I. Although he probably could have chosen to make Champaign his residence, defendant affirmatively sought to exercise his rights of citizenship in Moultrie County by maintaining his voting registration and driver's license in Moultrie County. He also continuously returned to his father's home to work on the family farm. If a person has established a physical presence in two places where he may reside, he may choose which he intends to make his permanent home. Here, defendant never vacillated in his determination of his residence but clearly chose Moultrie County and swore to that effect when he decided to run for office there.

To allow the State to charge someone with perjury for exercising their choice and picking a residence that differs from where the State thinks they should be a resident imposes a chilling effect on running for office. If facts are present to allow a person to select between two locations, it is solely the individual's choice that determines where his or her residence actually is. Because this choice of an individual's residence must be made in addition to and in conjunction with the facts creating a physical presence at a location, the charge of perjury will not lie when one simply chooses one location over another as his residence. No crime is committed in such a situation.

We reverse the trial court's judgment.

Reversed.

APPLETON, J., concurs.

JUSTICE McCULLOUGH, dissenting:

I respectfully dissent. The defendant was properly charged with perjury. See *Fagiano v. Police Board of the City of Chicago*, 98 Ill. 2d 277, 456 N.E.2d 27 (1983). The jury heard the evidence, was properly instructed as to the law, and found the defendant guilty.

The record shows the defendant used residence as a convenience to his best interest, be it Champaign County or Moultrie County. To adopt the majority's position that the charge of perjury is not proper

"when one simply chooses one location over another as his residence" (355 Ill. App. 3d 850) eliminates any importance to the sworn statement of candidacy executed by the defendant.

The trial court's judgment should be affirmed.