In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1954

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL V. COLLINS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:10-CR-30061-001-WDS—**William D. Stiehl**, *Judge.*

ARGUED SEPTEMBER 29, 2011—DECIDED JULY 6, 2012

Before RIPPLE, MANION, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Michael Collins served for many years as a city councilman and vice-mayor of East St. Louis, Illinois, but left city service in 2002 and moved to the suburbs. Although he no longer lived in the city, he used his previous address in East St. Louis to continue to vote there and to establish residency for his successful election and re-election to the public office of precinct committeeman for the local Democratic Party. This fraud attracted the attention of the Public Corrup-

tion Task Force in southern Illinois. Federal agents checked his tax filings to verify his residency and discovered that Collins had not filed federal or state income-tax returns for almost two decades.

Collins was indicted on multiple counts of tax evasion, willful failure to file tax returns, and voter fraud. He was convicted by a jury and the district court imposed a within-guidelines sentence of 50 months in prison. On appeal Collins challenges the jury instructions and the sufficiency of the evidence on the tax-evasion and voter-fraud counts. He also claims that the district court erroneously calculated the tax loss for purposes of arriving at the guidelines sentencing range.

We affirm. The district court used the Seventh Circuit pattern jury instructions for tax evasion, which properly define the required element of willfulness and need no clarification to distinguish the crime of tax evasion from a mere negligent failure to file a tax return. There was no special reason for such a modification here; it's not remotely plausible to attribute a tax delinquency of almost two decades to mere negligence. The jury was properly instructed on the voter-fraud counts as well; the court did not misstate Illinois law regarding the requirements for establishing voting residency, as Collins contends.

The evidence on the tax-evasion and voter-fraud counts was abundant and easily sufficient to support the jury's verdict. Collins did not file federal or state tax returns for many years, and to hide his income, he commingled his personal and business accounts, used a false Em-

ployer Identification Number, and misappropriated the Social Security Number of his deceased business partner. As for the voter-fraud counts, the evidence established beyond any doubt that for several years after he moved to the suburbs, Collins voted and ran for office from an address in East St. Louis that he had abandoned. Finally, the district court did not miscalculate the amount of the tax loss. The court properly rejected the testimony of Collins's tax-loss expert as unreliable and credited the estimate offered by an IRS Special Agent instead.

## I. Background

In 1980 Collins started a construction and demolition company, C&R Construction Company, in East St. Louis. He later suspended its operation when he was elected to the East St. Louis City Council. Collins rose through the Council's leadership ranks, eventually serving as vice-mayor for several years before leaving the Council in 2002. He then revived his construction business by exploiting his contacts in city government; his primary customers were the City of East St. Louis and the East St. Louis Housing Authority. And he held onto political power, albeit in another capacity. In 2002, shortly after leaving the City Council, Collins was elected to the public office of precinct committeeman for the East St. Louis Democratic Party. He was re-elected in 2004, 2006, and 2008.

Collins first came to the attention of the Public Corruption Task Force in the Southern District of Illinois in

March 2005. He was registered to vote at 22 Loisel Drive in East St. Louis and regularly voted in federal elections based on that address. He also used that address to establish residency for the office of Democratic precinct committeeman. Yet Collins did not, in any sense of the word, live at 22 Loisel Drive. In September 2002, when he stepped down from the City Council, Collins moved out of the city and leased a home in Belleville, a suburb about 15 minutes from the Loisel Drive address in East St. Louis. About a year later, he bought a newly constructed home at 4382 Redfield Drive in Swansea, a nearby suburb, and moved his family there. The home in Swansea was, by all accounts, his permanent residence. Collins enrolled his daughter in the local public school, registered and garaged his vehicles at his home in Swansea, and listed the Swansea address as his primary residence on various financial and real-estate documents.

Federal agents opened an investigation and checked IRS records to see what address Collins listed on his tax returns. They made a shocking discovery: Collins had not filed a federal income-tax return since March 1992, when he submitted a belated return for the 1990 tax year. Nor had he paid any state taxes for 22 years. On March 15, 2005, federal agents paid a visit to the Loisel Drive property. There they were greeted by Collins's nephew, who was the only occupant of the home (the property was owned by Collins's sister). The agents asked to see Collins's bedroom, and the nephew showed them to an unfurnished room at the back of the house. The room was

almost completely empty, containing only a portable toilet, a walker, and one item of clothing in the closet.

The visit from federal agents prompted Collins to file delinquent federal tax returns for tax years 1998 through 2005. He did not submit any payment, however, and did not file returns for tax years 1991 to 1997. Further investigation revealed that Collins had prepared income-tax returns for 2003 and 2004 in connection with a credit-union loan application. He never filed these returns, however; they were apparently created as fictitious support for the loan application.

Collins was indicted on nine counts: three counts of tax evasion in violation of 26 U.S.C. § 7201 (for tax years 2003, 2004, and 2005); three counts of willful failure to file tax returns in violation of 26 U.S.C. § 7203 (for the same years); one count of bank fraud in violation of 18 U.S.C. 1344 (for using fraudulent tax returns in connection with the loan application); and two counts of voter fraud in violation of 42 U.S.C. § 1973i(c) (for providing false residence information to establish eligibility to vote in federal elections in 2006 and 2008). The case was tried to a jury, and Collins was convicted on eight of the nine counts; the jury acquitted him on the bank-fraud count.

At sentencing the district judge heard testimony from IRS Special Agent Bradley Roessler about the amount of the tax loss. The evidence at trial had established that Collins commingled his personal and business accounts and did not keep traditional business books or financial records, so calculating a precise tax-loss figure

was impossible. Using the lowest measure of tax loss specified in the guidelines—20% of gross income, *see* U.S.S.G. § 2T1.1(c)(2)—and conservatively estimating Collins's income during the relevant time period, Roessler placed the tax loss at approximately $400,000, *see* U.S.S.G. § 2T4.1. Collins retained an expert, Nancy Noonan, to attempt to reconstruct his tax liability. She testified as well, but on cross-examination admitted that her analysis was based on incomplete and in many cases inaccurate information provided by Collins. The district court credited Roessler's estimate of the amount of the tax loss and rejected Noonan's. This resulted in an offense level of 20, which, when combined with Collins's criminal history category of III, yielded an advisory guidelines range of 41 to 51 months' imprisonment. The judge imposed a sentence of 50 months on each count, to run concurrently. This appeal followed.

## II. Discussion

Collins raises several issues on appeal. First, he argues that the district court erred in denying his request for a supplemental jury instruction explaining that a mere negligent failure to file tax returns could not satisfy the element of "willfulness" on the tax-evasion counts. Second, he maintains that the evidence was insufficient to convict him of tax evasion. Third, he claims he was entitled to a judgment of acquittal on the voter-fraud counts because the evidence did not establish his ineligibility to vote from the East St. Louis address under Illi-

nois's definition of voter residency. Finally, he argues the district court miscalculated the tax loss for purposes of sentencing by using the government's calculation instead of his expert's.

## A. Tax-Evasion Jury Instruction

Collins asked for a special jury instruction on the "willfulness" element of the tax-evasion offense, but the district court denied his request. We review this decision for abuse of discretion. *United States v. Tanner*, 628 F.3d 890, 904 (7th Cir. 2010). Under this deferential standard, we will "'reverse only if the jury instructions, viewed as a whole, misguide[d] the jury to the litigant's prejudice.'" *United States v. Smith*, 223 F.3d 554, 566 (7th Cir. 2000) (quoting *United States v. Rodriguez-Andrade*, 62 F.3d 948, 953 (7th Cir. 1995)).

A person commits the felony crime of tax evasion if he "willfully attempts in any manner to evade or defeat any tax." 26 U.S.C. § 7201. The district court used two Seventh Circuit Pattern Jury Instructions on the element of willfulness in the tax-evasion counts. The first instructed the jury that "the term 'willfully' means the voluntary and intentional violation of a known legal duty." *See* 7TH CIR. PATTERN INSTRUCTION 4.09. The second noted that a "defendant does not act willfully if he believes in good faith that he is acting within the law." *See id.* 6.11. Collins sought a supplemental instruction defining "willfully" as specifically excluding "negligence, inadvertence, justifiable excuse, mistake, or a misunderstanding of the law."

The district court did not abuse its discretion in denying Collins's request to supplement the pattern instructions. We have previously held that a jury need not be specifically instructed that "willful" tax evasion requires more than a mere negligent failure to file a return. *United States v. Shavin*, 320 F.2d 308, 313 (7th Cir. 1963); *see United States v. McGill*, 953 F.2d 10, 13 (1st Cir. 1992) (same); *United States v. Colacurcio*, 514 F.2d 1, 8 (9th Cir. 1975) (same). In *Shavin* we held that "[t]he jury was thoroughly informed on the necessity of proof of wil[l]ful violation with intent to defraud the Government of the taxes due, and this should have eliminated a finding of guilty based upon negligence." 320 F.2d at 313.

That holding applies here. Collins's jury was properly instructed on the element of willfulness; the two pattern instructions necessarily—if implicitly—excluded a conviction based on negligent failure to file. Collins's proposed supplemental instruction regarding negligence was redundant and therefore unnecessary. It was also wholly unsupported by the evidence in this case. Collins's persistent failure to file federal and state tax returns—spanning nearly 20 years—cannot plausibly be attributed to mere "negligence."

**B. Sufficiency of the Evidence on the Tax-Evasion Counts**

Collins also challenges the sufficiency of the evidence on the tax-evasion counts. This is "'a daunting [task for the defendant], as the standard of review . . . is necessarily rigorous.'" *United States v. Durham*, 645 F.3d 883, 892 (7th Cir. 2011) (quoting *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (ellipses in original)). We "consider[] the evidence in the light most favorable to the Government, defer[] to the credibility determination[s] of the jury, and overturn[] a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Huddleston*, 593 F.3d 596, 601 (7th Cir. 2010).

To convict Collins on the tax-evasion counts, the government had to prove more than a willful failure to file a tax return, which is a separate, lesser offense.[1] For each of the tax years at issue, the government had to prove that Collins took some willful, affirmative step to "evade

---

[1] In this circuit, a defendant may be convicted and sentenced for both tax evasion in violation of 26 U.S.C. § 7201 and willful failure to file a tax return in violation of 26 U.S.C. § 7203. *See United States v. Foster*, 789 F.2d 457, 459-61 (7th Cir. 1986). Our holding in *Foster* is contrary to the position of eight of our sister circuits, and we have recently suggested that it may need to be revisited. *United States v. Hassebrock*, 663 F.3d 906, 916-17 (7th Cir. 2011). We do not address the issue here because Collins did not raise it.

or defeat" his tax obligation. 26 U.S.C. § 7201; *United States v. King*, 126 F.3d 987, 989 (7th Cir. 1997). Thus, to convict Collins of tax evasion under § 7201, the government had the burden of proving the following three elements: "(1) a tax deficiency existed, (2) the defendant acted willfully, and (3) the defendant took an affirmative step to elude or defeat the payment of taxes." *United States v. Hassebrock*, 663 F.3d 906, 918 (7th Cir. 2011).

Collins argues that the evidence was insufficient to prove the second and third elements of the offense. The government introduced evidence of four affirmative acts Collins undertook to willfully evade his tax obligations: (1) he used a phantom Employer Identification Number; (2) he misappropriated the Social Security Number of his deceased business partner; (3) he refused to give an Employer Identification Number to a construction contractor in an effort to frustrate the contractor's IRS reporting requirement; and (4) he commingled his personal and business funds to avoid paying taxes.

More particularly, senior IRS criminal investigator Richard Dutzel testified that in contracts with a private builder and the East St. Louis Housing Authority, Collins used an Employer Identification Number that did not exist in any IRS database. In several other contracts with the City, he used the Social Security Number belonging to John Rose, his deceased business partner. Collins argued, implausibly, that a city bureaucrat mistakenly placed Rose's Social Security Number on the City's forms, supposedly confusing Collins with his former associate. The jury was entitled to reject this fanciful explanation, especially in light of an item of

evidence found in Collins's Swansea home: When IRS agents executed a search warrant at the home, they recovered a handwritten note containing Rose's name, birth date, and Social Security Number.

A third affirmative act of tax evasion related to Collins's demolition and excavation work on a subcontract with John Carlyle, of Carlyle Construction Management, in connection with a project known as the Mary Brown Center in East St. Louis. Carlyle testified that he asked Collins eight or ten times for his Employer Identification Number for tax-reporting purposes on the subcontract, but Collins never provided it. The jury was entitled to infer from this evidence that Collins was intentionally evading his tax obligations for the work he performed on the Mary Brown Center project.

Finally, Special Agent Roessler testified that based on his review of subpoenaed bank records, Collins's personal and business accounts were commingled. He explained that Collins wrote an unusually large number of checks to himself—amounting to over $300,000 in three years. Based on Agent Roessler's testimony, a reasonable jury could infer that Collins cashed out significant funds to elude payment of taxes. The evidence is more than sufficient to sustain the tax-evasion convictions.

## C. Voter-Fraud Counts

The Voting Rights Act of 1965 makes it a crime for a person to "knowingly or willfully give[] false informa-

tion as to his name, address or period of residence in the voting district for the purpose of establishing his eligibility to register or vote." 42 U.S.C. § 1973i(c). In the March 2006 Illinois primary election when several federal offices were on the ballot, Collins voted in East St. Louis, claiming residency in Precinct 26 and using the 22 Loisel Drive address. He did the same for the February 2008 primary election. He also used that address to establish residency for his election and re-election to the office of Democratic precinct committee-man in 2002, 2004, 2006, and 2008.

Residency for voting purposes is generally determined by reference to state law. Though the federal constitution and laws govern certain important aspects of the franchise, the states generally retain the power to regulate the exercise of the franchise. *See, e.g.,* U.S. CONST. art. 1, § 2, cl. 2; U.S. CONST. art. 2, § 1; U.S. CONST. amend. XVII, ¶ 1. Thus, although this case concerns a federal crime, Illinois law governs the issue of residency for purposes of voter registration and eligibility to vote. *See United States v. Cianciulli*, 482 F. Supp. 585, 619-23 (E.D. Pa. 1979) (analyzing residential eligibility for § 1973i(c) using Pennsylvania state election law).

Under Illinois law "[t]wo elements are necessary to create a 'residence' for voter registration purposes: physical presence and an intent to remain there as a permanent resident." *People ex rel. Madigan v. Baumgartner*, 823 N.E.2d 1144, 1150 (Ill. App. Ct. 2005). "Residence is lost upon abandonment; however, 'an absence for months, or even years, if all the while intended as a

mere temporary absence for some temporary purpose, to be followed by a resumption of the former residence, will not be an abandonment.'" *Id.* (quoting *Stein v. Cnty. Bd. of Sch. Trs.*, 240 N.E.2d 668, 669 (Ill. 1968)).

Prior to 2002 Collins resided at the home on Loisel Drive and lawfully voted based on that address. In 2002, however, he moved to a rented home in Belleville, a suburb of East St. Louis, and the following year purchased a newly constructed home in Swansea and moved his family and all his belongings there. As such, there is no question about his "physical presence" for voter-residency purposes: It was in Swansea at the 4382 Redfield Drive residence. The only possible issue for the jury was his intent to remain there as a permanent resident. On this, and the related issue of his abandonment of the Loisel Drive address, the evidence is overwhelming and amply supports the jury's verdict on the voter-fraud counts.

The house on Loisel Drive belonged to Collins's sister, and at the time federal agents inspected it in March 2005, Collins's nephew was its only apparent occupant. None of Collins's belongings remained in the home. The room the nephew identified as Collins's bedroom was barren: It contained no furniture, pictures, or personal effects to suggest that anyone lived in it. There was only a portable toilet, a walker, and a single item of clothing in the closet. The home itself was in serious disrepair and lacked basic maintenance; federal agents discovered the electric meter and air-conditioning compressor were missing and several

windows were broken. All this points conclusively toward abandonment.

On Collins's intent to establish the Swansea home as his permanent residence, all the evidence likewise supports the jury's verdict. When Collins moved into the new home on Redfield Drive, he enrolled his daughter in the local public school district. He listed the Swansea home as his primary residence on numerous official documents, including his daughter's school-residency form; his first and second mortgages; his auto loans, insurance, and registration forms; and his property-tax documents. When he filed an insurance claim for the theft of one of his vehicles, he told the adjuster that the Swansea home was his primary residence and the place where all his vehicles were garaged.

Collins's challenge to the voter-fraud convictions is based on the Illinois Supreme Court's decision in *Maksym v. Board of Election Commissioners*, 950 N.E.2d 1051 (Ill. 2011), which was issued after his trial. He argues that *Maksym* announced a new test for residency under Illinois election law. It did not. *Maksym* synthesized a settled line of Illinois precedent and reiterated the State's long-standing basic requirements for voting residency: "(1) physical presence, and (2) an intent to remain in that place as a permanent home." *Id.* at 1064. The Illinois Supreme Court also explained the principle of abandonment as applied to the question of residency for voting purposes, but the court went out of its way to emphasize that "the governing law on this question

ha[s] been settled in this State for going on 150 years." *Id.* at 1057. Nothing in *Maksym* undermines the factual or legal basis for Collins's voter-fraud convictions. The jury was properly instructed on this crime,[2] and the evidence amply supports the guilty verdict on these counts.

## D. Tax-Loss Calculation

Collins also challenges the district court's tax-loss calculation for purposes of determining his guidelines sentencing range. The government had the burden of proving tax loss by a preponderance of the evidence. *United States v. Schroeder*, 536 F.3d 746, 752 (7th Cir. 2008). "We review the findings of fact that underlie the district court's determination of taxable income for clear error*." United States v. Whitson*, 125 F.3d 1071, 1074 (7th Cir. 1997) (citing *United States v. Bhagavan*, 116 F.3d 189, 191 (7th Cir. 1997)). As in other circumstances, we generally defer to a district court's assessment of a witness's credibility. *Id.* (noting the district court's "clearly articulated credibility determination" regarding a key sentencing witness).

---

[2] Collins asserts that the district court erred in rejecting his proposed jury instruction on the issue of residency for voting purposes under Illinois law. His argument on this point consists of a single sentence and thus is too undeveloped to warrant further consideration. *See United States v. Diekemper,* 604 F.3d 345, 355-56 (7th Cir. 2010).

The presentence report recommended that the court calculate the tax loss by reference to the lowest measure specified in the applicable guideline: 20% of gross income. *See* U.S.S.G. § 2T1.1(c)(2) (2010). Special Agent Roessler testified at sentencing that the true marginal tax rate would have been much higher, so using the 20% rate was actually the most favorable measure to Collins. Agent Roessler testified that Collins did not keep traditional business books, his financial records were woefully incomplete, and his personal and business bank accounts were commingled, making a precise determination of income impossible. Only a rough estimate of Collins's gross income and resulting tax loss could be made. Based on a conservative estimate of gross income, Agent Roessler concluded that the tax loss was approximately $400,000. The guidelines specifically approve of this kind of rough estimate where, as here, the defendant did not file a tax return for many years and his financial records are inaccurate or incomplete. *See id.* § 2T1.1 cmt. n.1 ("In some instances, such as when indirect methods of proof are used, the amount of the tax loss may be uncertain; the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts."). The district court accepted Agent Roessler's conclusion, which resulted in an offense level of 20. *See id.* § 2T1.4.

Collins contends that the court should have rejected Agent Roessler's estimate and accepted the analysis of his expert instead. This argument is a nonstarter. Collins's expert admitted that her attempt to recon-

struct Collins's tax liability was necessarily dependent on the accuracy and truthfulness of the financial information he provided. She also admitted that her analysis was incomplete in many respects. Here, as in *Whitson*, the district judge made a clear credibility determination regarding the testimony of the two experts, accepting the estimate of the government's expert and rejecting the defense expert's testimony. *Cf. Whitson*, 125 F.3d at 1074. In particular, the judge was skeptical of Collins's expert's testimony to the extent that it was based on information from Collins himself, who had "deliberately[] and intentionally lied under oath to the jury and to the [c]ourt about matters that were crucial to his guilt or innocence." We defer to the district court's credibility determinations.

In this regard, this case closely resembles *United States v. Valenti*, 121 F.3d 327 (7th Cir. 1997). There too a defendant convicted of tax evasion argued that the 20% calculation for tax loss should be set aside and his own, supposedly more precise calculation should be used. The district court found that the defendant's itemization of expenses and the other testimony he offered in support of his alternative tax-loss calculation was "speculative and incredible," and adopted the government's calculation instead. *Id.* at 334. We held that "the district court was in the best position to judge [the defendant's] credibility" and affirmed the judge's tax-loss finding "because a fact-finder's choice between two permissible options cannot be clearly erroneous." *Id.* The same is true here. The

district court's tax-loss finding was not clear error.[3]

AFFIRMED.

---

[3] In his opening brief, Collins also argued that the 50-month sentence exceeded the advisory guidelines range applicable to the voter-fraud counts. The basis for this argument is unclear. In his reply brief, Collins leaves the argument unexplained but concedes that any error in the sentence on these counts would be harmless if the sentence on the other counts is affirmed.

---